(No. 14791.—Reversed and remanded.)
THE MERCHANTS' LOAN AND TRUST COMPANY, Appellee,
vs. NANNINE WALLER PATTERSON, Appellant.

*Opinion filed June 20, 1923.*

1. TRUSTS—*cestui que trust is in equity the beneficial owner.* In equity the *cestui que trust* may deal with his equitable estate as property of which he is the beneficial and substantial owner, and if he is under no disability any conveyance by him will have the same operation upon the equitable estate as a conveyance of the legal estate would have at law upon the legal estate.

2. SAME—*equitable estates are governed by same rules as legal estates.* Equitable estates are governed by the same rules of property as legal estates.

3. SAME—*when deed of trust creates defeasible equitable estate in grantors.* A deed of trust giving the trustee full authority, for a fixed period, to manage the property and pay incumbrances, expenses and liens, to pay the grantors the net income during the trust period, and providing for the disposition of the share of any grantor dying before the expiration of the trust, does not create a life estate with remainders but creates a defeasible equitable estate in the grantors, and any conveyance by a grantor of his beneficial interest is subject to the provision for the disposition of the share of any grantor dying during the trust period.

4. SAME—*when possible interest of cestui que trust is not a remainder.* A deed of trust providing that the equitable fee of the *cestui que trust* in the event of his death before the termination of the trust period shall go to whom he may appoint by will, or, in default of appointment, to his son, does not create a remainder in the son, as the new estate created on the happening of the condition is in derogation of the estate of the *cestui que trust* as a shifting use and not in succession to it as a remainder.

5. DEEDS—*conveyance of base fee carries condition with it.* A fee subject to a condition, upon the happening of which it shall terminate and the estate shall go to another taker, may be conveyed, but the condition will still attach to the estate in the hands of the grantee.

6. WILLS—*technical words not needed to exercise power of appointment.* Technical language in a will is no more necessary to the exercise of a power of appointment than to the making of a devise, but the question is purely one as to the intention of the testator, which, when ascertained, will be given effect, however informal may be the language in which it is expressed.

7. SAME—*ineffective conveyance by deed may be confirmed and made effective by will.* While the mere recital of a deed in another instrument cannot give it an effect which it is legally impossible for it to have, the attempt in a will to confirm the deed and give it effect may show the testator's intention to accomplish by his will, in a legal manner, the purpose which the deed failed to execute.

8. POWERS—*when equity will aid defective execution of power.* Equity will aid the defective execution of a power where the intention clearly appears from the instrument and where the attempted execution is in favor of persons for whom the donee of the power is under a moral or legal obligation to provide, but equity will not remedy defects which are of the essence or substance of the power, nor will equity interfere to compel the execution of the power.

9. SAME—*general rule as to when execution of power is valid in equity when made by will instead of deed, and vice versa.* A defect in the execution of a power by will when it was required to be done by deed will be aided in equity, but where the power is attempted to be exercised by an irrevocable deed when it was directed to be done by will the defective execution cannot be remedied, for in the latter case the deed is contrary to the donor's apparent intention that the appointment should continue in the control of the donee during his life.

10. SAME—*when attempted execution of power by deed is made effective by will.* Where a donee has a power of appointment by will, only, and executes a deed, which would be an exercise of the power but for the limitation of the manner of its exercise to a will, a will subsequently executed in which the "conveyance and appointments" of the deed are "confirmed," will, in equity, render valid the execution of the power.

APPEAL from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

MAYER, MEYER, AUSTRIAN & PLATT, (LEVY MAYER, HENRY RUSSELL PLATT, and M. PAUL NOYES, of counsel,) for appellant.

McCULLOCH, McCULLOCH & DUNBAR, and HORACE KENT TENNEY, guardian *ad litem,* (RALPH D. SHANESY, of counsel,) for appellee.

CHARLES S. BABCOCK, *amicus curiæ.*

Mr. JUSTICE DUNN delivered the opinion of the court:

The Merchants' Loan and Trust Company, as trustee under the will of Stewart Patterson and under a deed of trust executed by him on October 23, 1914, filed in the circuit court of Cook county a bill asking for the construction of those instruments and a previous deed of trust, and for the instruction and direction of the court as to its duties as trustee. Some of the defendants answered, others were defaulted, a guardian *ad litem* was appointed and filed an answer, Nannine Waller Patterson, the widow of Stewart Patterson, filed a cross-bill, the cause was heard and a decree construing the instruments in question was entered, from which Mrs. Patterson has appealed.

Before December 20, 1897, Stewart Patterson and his three aunts, Hannah M. Williams, Helen W. S. Johnson and Fannie Johnson, were the owners as tenants in common in fee simple, in equal shares, of sub-lots 13 and 14 of lots 1, 2, 7 and 8 of block 37 in the original town of Chicago, the share of Stewart Patterson being subject to a life estate of his father, John C. Patterson, in one-third thereof. The premises were subject to a leasehold estate created in Herman H. Kohlsaat on May 1, 1893, which had been assigned by the original lessee to the Merrimac Building Company, and to a mortgage to secure the payment of $140,000. The undivided one-fourth of the premises owned by Mrs. Williams was also subject to a mortgage executed by her to secure the payment of $46,000. On December 20, 1897, Stewart Patterson and his co-tenants, together with his father, conveyed the premises in fee simple to the Northern Trust Company in trust, to collect all the income, rents and profits of the premises, and to pay out of the money so collected, first, the sum of $20,000 to such persons and in such amounts as might be directed by the joint order of the grantors, then the interest on the $140,000 mortgage or any extension or renewal of it, and any other indebtedness, principal and interest, which might at any time be incurred

by the trustee under any of the provisions of the deed or for which the trust estate might be liable, and all necessary costs, charges and expenditures, including compensation to the trustee, except certain specified indebtedness, costs, charges and expenditures. After making provision for making the payments specified out of the income, the trustee was directed to pay the remainder of the income until the $140,000 mortgage or any extension or renewal of it should have been paid, as follows: To the owner of each undivided fourth of the premises, on the first day of each month, $833.33 until and including January, 1900, and after that date $1000, or such proportionate part of those respective sums as the remainder of the income might be sufficient to pay, the payment on the one-fourth belonging to Stewart Patterson to be made, two-thirds to him and one-third to John C. Patterson during the latter's life. After the payment of all the indebtedness secured by mortgage upon the premises, except the $46,000 mortgage on Mrs. Williams' one-fourth, the trustee was required, after making provision for the payment of all current necessary costs, charges, indebtedness and expenses of the trust, to pay on the first day of each month to the four tenants in common, each, one-fourth of the income, except that John C. Patterson during his life should receive one-third of Stewart Patterson's one-fourth. The deed of trust provided that on May 1, 1917, or as soon thereafter as possible, or immediately upon the revocation of the deed as therein provided, the trustee should convey to each of the four tenants in common an undivided one-fourth interest in the property in fee simple, the share of Stewart Patterson to be subject to a life estate in John C. Patterson, which was to be conveyed to the latter. The term "equitable owner," wherever used in the deed of trust, was defined to mean any person who at the time referred to should be entitled to the whole or any part of the monthly payments directed to be made out of the income, and any person so entitled was stated to be

deemed an equitable owner, within the meaning of any of the provisions of the instrument, of the same fractional part of the property itself as the share of the remainder of the income directed to be paid to him or her was of the whole remainder. It was provided that during the continuance of the trust and until the conveyance of the property, the trustee, subject to the provisions of the deed of trust, should have all the title, rights, powers and remedies of the lessors provided in the lease, and in case of its termination should have power, from time to time, to lease the whole or any part of the premises without any request of the equitable owners, for any term not exceeding three years, for such rent and upon such terms as the trustee might determine, or, on request in writing of the equitable owners of one-half of the property, for any term not extending beyond May 1, 1917, or, on request of the owners of three-fourths of the property, for any term not exceeding ninety-nine years. The trustee was given power to settle, adjust and compromise any claim at any time existing in favor of the trustee or the trust property against any other person, and to settle, compromise, satisfy or pay any claim against the trustee or the trust property, but if the amount involved should exceed $1000, only upon the written request of the equitable owners of one-half of the trust property. The deed also authorized the trustee, upon the written request of the equitable owners of three-fourths of the trust property, to raise money for the purposes of the trust by mortgage upon the whole or any part of the trust property and to sell at public or private sale all or any part of such property, and provided for certain advances to be made by the trustee to the tenants in common, respectively, in case the income collected and in the hands of the trustee applicable thereto should not at any time be sufficient to make in full the monthly payments required to be made out of the income, and provided for the reimbursement of the trustee for such advances, and interest thereon, out of any moneys

afterward payable to the respective beneficiaries under the terms of the deed of trust, and that such advances should be a lien on the fee of the undivided one-fourth of the property to the income of which the person to whom such advances were made was entitled at the time of making such advances. The deed was revocable by an instrument in writing executed by the equitable owners of three-fourths of the property, but it was stipulated that the revocation should not affect the conveyance of any property theretofore made by the trustee, or any lien in favor of the trustee or any person, by way of mortgage or trust deed or otherwise, then on the premises or any part thereof or any interest therein, but all such conveyances should remain valid and all such liens should remain a charge on the property and interest subject to the same. There were many other provisions in the deed of trust not material to a consideration of the questions involved. The deed further provided that in case of the death of any one or more of the tenants in common before the time fixed for making the conveyances to them, the share or shares of the income after the death of the one or ones so dying to which the one or ones so dying would have been entitled if then alive should be paid until the making of such conveyance, and the share or shares of the property to which the one or ones so dying would have been entitled if alive at the time fixed for making the conveyance by the trustee should be conveyed at that time to such person or persons as the one or ones so dying might, respectively, have appointed by will and according to the shares and proportions designated in such will, and in default of such appointment to the child or children, respectively, of the one or ones respectively so dying, in equal shares. Limitations follow as to the conveyance of the property in case of the death of either or all of the co-tenants without children surviving or without children or grandchildren surviving, but need not be stated because no such event occurred, the final limitation being that

the conveyance should be made to the legal heirs of the one or ones dying without children or grandchildren, according to the statutes of the State of Illinois then in force.

Stewart Patterson was unmarried at the time of the execution of this deed. In 1903 he was married to the appellant, and Stewart Patterson, Jr., is their only child. He was made a defendant to the bill, and was represented in the circuit court, and is represented here, by a guardian *ad litem*. Mrs. Patterson was the owner of some property which was sold and the purchase price was credited to her husband's bank account, under what circumstances the record does not disclose. This fact is mentioned because it is made the basis of an argument by the appellant, but since it is immaterial to the disposition to be made of the case it will receive no further attention. The $140,000 mortgage and the $46,000 mortgage on Mrs. Williams' interest have been paid and released of record. The payment of $20,000 required to be made on the joint order of the co-tenants has been so made. The monthly payments of income have been made. The leasehold estate is now owned by Edward A. Shedd. Between February 20, 1912, and September 23, 1914, Stewart Patterson and his wife executed five mortgages purporting to convey to the Northern Trust Company an undivided one-fourth of sub-lots 13 and 14, subject to the life estate of John C. Patterson, to secure the payment of promissory notes amounting to $49,900, on which there remains due the sum of $28,783.34, with interest from November 2, 1921. These notes were probated as claims against the estate of Stewart Patterson.

On October 23, 1914, Stewart Patterson and his wife executed a deed to the Merchants' Loan and Trust Company as trustee, conveying to it an undivided half interest in all the rights, title and interest of Patterson in his certain undivided one-quarter interest in "sub-lots thirteen (13) and fourteen (14) of lots one (1), two (2), seven (7) and eight (8) of block thirty-seven (37) in original town of

Chicago, and all and singular the tenements, hereditaments and appurtenances thereunto appertaining or in anywise belonging, together with any and all reversion or reversions, remainder or remainders or estate in expectancy accruing to or vested in said Stewart Patterson because of or on account of his said interest in said property and premises, and all rents now due or to become due and the issues and profits thereof," subject to the deed of December 20, 1897; to any other trust deed or agreement made pursuant to the terms or in continuation or extension of said trust deed or in relation to the subject matter thereof under any power therein given the trustee; to the life estate of John C. Patterson; to the five mortgages given to the Northern Trust Company; to an agreement for further security dated September 23, 1914; and to any mortgage or other instrument thereafter made, refunding, renewing, extending the time of payment of, further securing or assuming said indebtedness in whole or in part. The trusts declared by this deed, so far as necessary to be stated, were for the collection of the income accruing on account of the interest conveyed to the trustee and the payment of the net income quarterly to the appellant during her life, and in the event of her death or her re-marriage after the death of Stewart Patterson or the dissolution of the marriage between them, to or for the benefit of Stewart Patterson, Jr., subject to certain provisions in regard to the time and manner of such payments to or for the benefit of Stewart Patterson, Jr.

Stewart Patterson, the father, died on June 18, 1915, having executed his will on November 12, 1914, which was admitted to probate. It made no mention of the appellant except in the fourteenth paragraph, which was as follows:

"*Fourteenth*—I am not unmindful of the claims which my wife, Nannine Waller Patterson, and my father, John C. Patterson, may have upon me. They are not mentioned in this my will as devisees or legatees because (1) I have already vested in my father a life estate in one-third of an

undivided one-fourth interest in the property covered by the indenture of trust and conveyance dated December 20, 1897, hereinabove mentioned; and (2) I have already made independent and adequate provision for my wife in and by a certain indenture of trust dated October 23, 1914, to the Merchants' Loan and Trust Company, my wife joining therein with me, and among other things agreeing in paragraph 4 thereof, as one of the considerations of the conveyance and appointments therein made by me, as follows: 'Said Nannine Waller Patterson hereby waives and releases all rights under any and all homestead exemption laws, and further waives, releases and relinquishes all rights and claims of every kind against said Stewart Patterson, his heirs, executors, administrators and assigns, including any and all rights or claims of inheritance or descent, homestead or dower in and to any property, title or estate of said Stewart Patterson now owned or hereafter acquired by him, and agrees to execute and deliver, from time to time, to or with said Stewart Patterson or his vendee or vendees, assign or assigns, or his heirs, executors, administrators, or their vendee or vendees, assign or assigns, such further or other deed, release, conveyance or other instrument in writing as may be requested by said Stewart Patterson or any of the other persons in this paragraph described, in order to effectuate such release and waiver at any time or times, either during the life or after the decease of said Stewart Patterson.' Subject to the faithful performance by said Nannine Waller Patterson of the agreement to execute and deliver, from time to time, such other deed, release, conveyance or other instrument in writing as may be requested in order to effectuate such release, waiver and relinquishment and the purpose and intent of the provisions of the paragraph above quoted, I hereby in this my will confirm said indenture of trust dated Oct. 23, 1914."

The court decreed that the deed of December 20, 1897, conveyed the real estate in question to the grantee in fee

simple, subject to the lease; that Stewart Patterson had no right, title or interest in such real estate except as a beneficiary under the deed, with power of appointment by will only, and with no power or authority to convey by deed any interest in such real estate extending beyond his own life; that the deed of October 23, 1914, was not sufficient to convey title to any part of the real estate or of the income after the death of Patterson; that neither the deed alone, nor the deed in conjunction with the will, was an appointment in compliance with the deed of December 20, 1897.

Many propositions have been presented by the respective parties, but it is not necessary to a decision of the merits of the case to state all of them or to follow counsel through the elaborate arguments by which they are maintained. The controversy of capital importance is upon the construction of the deed of trust of December 20, 1897. The decree of the circuit court proceeded upon the theory that the effect of that instrument was to convey to the Northern Trust Company the entire interest, legal and equitable, in the property described, leaving in the grantors no equitable estate in the land; that their only interest under the deed was the right to share in the income during the trust period, with the power to appoint by will only the person to whom the trustee should convey in case of the death of any grantor during the trust period but with no right to convey any interest extending beyond the life of the grantor.

There can be no doubt that the deed of December 20, 1897, conveyed the fee to the grantee. The conveyance was, however, in trust, and the grantee took only the legal title, the equitable ownership being expressly reserved to the beneficiaries of the trust, who were entitled to receive the whole or any part of the monthly payments directed to be made out of the remainder of the income, rents and profits left after making the payment of $20,000, the payments on account of incumbrances and the cost of admin-

istration, all as directed in the deed itself. The intention of the grantors that the beneficiaries of the trust should have the equitable ownership of the property is as clearly expressed in the deed as the intention that the Northern Trust Company should have the legal title in fee. Subject to the limitations contained in the deed itself, the grantors retained the equitable ownership of the property to the same extent after the execution of the deed as before. These limitations were binding on the trustee and equally binding on the grantors. The trustee had certain duties to perform. It assumed certain obligations and certain powers were conferred upon it, but the owners did not part with all interest in and control over the property. The deed provided for the management of the property in the ordinary course of business by the trustee, and for advances to be made by the trustee to the respective owners, to be re-paid out of the income and to be a lien upon the fee of the undivided one-fourth of the property, to the income of which, or any part thereof, the person to whom any such advances should be made should be entitled at the time of making such advances under the terms of the deed. The trustee was authorized to renew the existing mortgage or execute a new mortgage in lieu of it, and, in case of a termination of the leasehold estate, to lease the whole or any part of the building for not over three years, to keep the property insured, pay all taxes, special assessments and water rates, make ordinary repairs and do other acts necessary for the preservation of the property, and was given authority to settle and adjust claims of a limited amount against or in favor of the trust estate. The trustee was further authorized, but only on the request in writing of half or more of the equitable owners of the property, to make leases in case the ground lease should terminate in any manner during the continuance of the trust, for any term not exceeding ninety-nine years; to make settlements of claims in excess of $1000; to raise money for any pur-

308—34

pose of the trust by mortgaging the whole or any part of the premises; and to sell the whole or any part of the property on such terms as the equitable owners might direct and pay the net proceeds of the sale to the beneficiaries, or, upon the written request of any equitable owner, to hold his share subject to the trust and re-invest it as directed in such request.

The whole beneficial enjoyment of the property by the receipt of the income, rents and profits, subject to the previously existing incumbrances and the payments provided for in the deed of trust, was reserved to the grantors until May 1, 1917, when the fee was to be re-conveyed to them. In *McFall* v. *Kirkpatrick,* 236 Ill. 281, a conveyance was made to a grantee in trust, to collect the rents, issues and profits, keep the premises in repair, pay all taxes, assessments and charges, pay the residue of the rents, issues and income to Eliza J. Houston during her life, and to convey the premises to such person or persons as she should appoint by will, and in default of such appointment the premises to belong to her and her heirs and assigns. It was held that this deed conveyed an equitable life estate to Eliza J. Houston with an ultimate limitation to her heirs, and that by virtue of the rule in *Shelley's case* she took an equitable fee, which her warranty deed conveyed to her grantee.

In a court of law the legal estate of the trustee, as a general rule, has the same properties, characteristics and incidents as if the trustee were the absolute, beneficial owner, and he may so deal with it. In equity, on the other hand, the *cestui que trust* may deal with his equitable estate as property. He is the beneficial and substantial owner, and if under no disability may sell and dispose of his estate, and any legal conveyance will have the same operation upon the equitable estate as a similar conveyance of the legal estate would have at law upon the legal estate. (1 Perry on Trusts, sec. 321.) It is a fundamental proposition that equitable estates are governed by the same rule as legal es-

tates, otherwise inextricable confusion would ensue. (Ibid. sec. 357.) In the consideration of a court of equity the *cestui que. trust* is actually seized of the freehold. He may alien it, and any legal conveyance by him will have the same operation in equity upon the trust estate as it would have had at law upon the legal estate. *Croxall's Lessee* v. *Shererd,* 5 Wall. 268.

The appellee insists that the deed was a conveyance of all legal and equitable interest in the property, and that the grantors had no equitable interest in the property except in the receipt of the net income during the trust period, the possibility of reverter at its expiration, and the right to appoint by will to whom the property should be conveyed in case of the death of any grantor. It relies upon the case of *DeHaven* v. *Sherman,* 131 Ill. 115, in which it was held that a freehold was not involved so as to give the Supreme Court jurisdiction of an appeal when the subject matter of the litigation was a life annuity payable out of the annual rents of the estate collected by the trustee. The annuitant had no connection with the title,—not even a lien on the *corpus* of the estate for the payment of his annuity. He had no control of the trustee, the title, the property or the trust and no right except to receive from the trustee payment of his annuity. Nothing which he could do could affect the title to the property, and in no event could he acquire any interest in the title, which was eventually limited to be conveyed to persons other than the annuitant. He had no other interest in the estate than the annuity, and it was held that such interest could be enforced only against the trustee personally, and that an assignment in bankruptcy of the estate of the annuitant did not pass a freehold in the property of the estate. The case is no authority for the position that the grantors in this deed, who were entitled, during the existence of the trust, to the whole beneficial use of the property in the only manner in which it could be enjoyed and were then entitled to the convey-

ance of the legal title in fee, had no equitable estate in the property but only a right which might be enforced in equity against the trustee.

What was the estate of Stewart Patterson in this property under the deed of trust? Before it was executed he was the owner in fee simple, subject to incumbrances, of an undivided one-fourth, and he conveyed this one-fourth to the Northern Trust Company in fee simple upon trusts which were very explicitly declared. No part of the equitable ownership of the lands was granted to any person. Provision was made for incumbrances, expenses and liens and for their payment, but there was nothing in the nature of a grant of any equitable estate in the premises or ownership of any part of them. Whatever surplus of rents and income there might be the trustee was required to pay to the grantor during the existence of the trust, and it was required at the expiration of the trust to convey the legal title to him in fee simple. No other person than the grantor could have any use or enjoyment of the property during the existence of the trust or afterward, except that the deed provided for a shifting use in the event of his death during the existence of the trust. The trust was created for a certain purpose and not with any intention of interfering with the grantor's real beneficial ownership of the property, which was intended to continue unimpaired during the trust and afterward. The trust having fulfilled its purpose, the legal title was to be restored to him as before the trust was created. This interest of the grantor, Stewart Patterson, was an equitable fee,—the sole equitable ownership,—qualified in only one particular. Before executing the deed of trust his estate was a fee simple, indefeasible. When he executed that deed he imposed upon the estate a certain condition in case he should die before the termination of the trust. That condition was, that in such event his equitable fee should cease and should not descend to his heirs, as it would otherwise have

done, but should go to such person or persons as he might appoint by his will, or in default of such appointment, as the facts have actually happened, to his son. His estate after the execution of the deed of trust was an equitable fee simple, defeasible in the event of his death before the termination of the trust, and in that event to go over, by way of shifting use, to such person as he might appoint by will, or in default of appointment to the persons specified in the deed. Upon his death before May 1, 1917, his estate in fee would come to an end, and the equitable ownership of the property would pass, not by descent to his heirs but by virtue of the deed of trust to the person whom he might have appointed by will, or if he had made no such appointment, to his children or grandchildren, or in default of any of these, to the persons who were his heirs. None of these, however, would take by inheritance from him, but whoever would take any estate would derive it from the deed of trust.

It is argued by the guardian *ad litem*, upon behalf of Stewart Patterson, Jr., that upon his birth an estate was immediately vested in him in his father's interest in this property after his father's death if such death occurred before May 1, 1917. The question is discussed as if the estate so claimed to be vested was a remainder, but the character of the estate of Stewart Patterson, the father, which precedes it, is not discussed. If the son's estate was a remainder it required a particular estate to support it, which must have been an estate for life or for years. There is nothing in the deed of trust creating an estate for life or for years in Stewart Patterson, Sr. He was entitled to the rents and profits to May 1, 1917, and a conveyance of the fee then, and these periods together cover all time. His estate was a fee which might be terminated by the uncertain event of his death before the termination of the trust period, and the new estate which would follow would be in derogation of his estate as a shifting use and not in succession to it

as a remainder. In fact, Stewart Patterson, Jr., before his father's death had no estate, either vested or contingent, in the property. There was merely the possibility that his father would die and would either appoint him or fail to appoint anyone, and thereby he would become entitled. Such an interest, if validly created, given by will would be an executory devise; given by deed would be a future interest governed by the same rules as to its creation and vesting as an executory devise. In either case the interest arises out of the direction contained in the instrument creating the trust, whether a will or a deed, that in the event of the happening of the specified contingency,— death before the expiration of the trust,—the use shall shift; that the interest of the deceased holder of the equitable fee shall cease and the trustee shall thereafter hold for the benefit of the person or persons specified in the deed of trust to take in such event. The creator of the trust, though himself a *cestui que trust,* occupies the same position in the latter relation as if the deed of trust had been made by another for his benefit, and the terms of the deed are equally binding on him and on the trustee. He may convey his equitable fee, but the estate will be subject to the same condition in his grantee as in himself. He can not, by any act based upon his ownership of the fee, destroy the future executory interest which he has created by the deed of trust. Such interests are indestructible by any conveyance by the owner, though he may determine in whom the future estate shall vest by the exercise of a power of appointment, if the instrument creating the estate so provides. A devise to one and his heirs forever but in case he should die without children or heirs of his body then over, is a valid devise of a fee determinable upon the death of the devisee without leaving children living. (*Summers* v. *Smith,* 127 Ill. 645; *Strain* v. *Sweeny,* 163 id. 603.) The subsequent limitation is void only where other language contained in the will plainly shows the clear intention of the

testator that the owner of the first estate in fee should not, in disposing of the property, be limited to the alienation of his fee defeasible upon condition but might convey the entire ownership of the property. *Howard* v. *Carusi,* 109 U. S. 725; *Wolfer* v. *Hemmer,* 144 Ill. 554; *Williams* v. *Elliott,* 246 id. 548; *Galligan* v. *McDonald,* 200 Mass. 299; 2 Redfield on Wills, 277; 4 Kent's Com. 270; 1 Tiffany on Real Prop. sec. 167, p. 568.

Since Stewart Patterson after the execution of the deed of December 20, 1897, was the equitable owner in fee of the undivided one-fourth of the premises subject to all the provisions of that deed, among which was the provision that his equitable estate should terminate upon his death during the existence of the trust and the equitable estate should then pass in accordance with the terms of the deed, and since his conveyance would have the same operation upon the equitable estate as a conveyance by the holder of the legal title would have upon the legal estate, the deed of October 23, 1914, conveyed to the Merchants' Loan and Trust Company one-half of Stewart Patterson's equitable interest in the undivided one-fourth of the property in trust for the appellant, subject to the terms of the deed. A fee subject to a condition, upon the happening of which it shall terminate and the estate shall go to another taker, may be conveyed, but the condition will still be attached to the estate in the hands of the grantee. So when Stewart Patterson died and his estate terminated, the estate which he had conveyed to the appellant also terminated. His deed was not an appointment under the deed of December 20, 1897, for the latter gave no power to appoint by deed, but his deed was merely a conveyance of one-half of all his interest in the undivided one-fourth of the property.

Three weeks after this deed was executed Stewart Patterson made his will, in which he referred to the conveyance and appointments made in the deed and stated that he had thereby made adequate provision for his wife and

that by his will he confirmed the deed. Can this expression of his intention be deemed the exercise of his right to designate the appellant to take the estate described in the deed? If this language expresses his intention that his wife shall hold the estate described in the deed it is a sufficient exercise of the power of appointment, which is merely a right to designate a person to take an estate. The question is purely one of the intention of the testator. Technical language in a will is no more necessary to the exercise of a power than to the making of a devise. In either case the intention of the testator, if it can be ascertained, will be given effect, however informal may be the language in which it is expressed. In *Funk* v. *Eggleston,* 92 Ill. 515, the rules laid down in many English cases in regard to the ascertainment of the intention of the donee of a power to act under the power, as well as Sugden's review of these cases in his work on Powers, are discussed, and it is stated that the fundamental principle deducible from the cases is that there should be a certain ascertainment of the intention of the donee of the power to act under the power, and that three classes of cases arose in which it was demonstrated to an absolute moral certainty there was an intention to execute the power, and these were, where there was a reference to the power, or to the subject or property covered by the power, or where the instrument would be inoperative without the aid of the power, and that by the weight of English authority there could be no execution of the power by a testator unless the case fell in one of these three classes. It was further said that this rule is altogether subordinate and secondary in its character, and if the circumstances indicated clearly the intention of the donee to work by the power the rule must give way, and the primary and fundamental rule, which requires only that the intention be made clear and manifest, would prevail. In *Blagge* v. *Miles,* I Story, 426, cited in *Funk* v. *Eggleston, supra,* it is said: "The main point is to arrive at the intention and ob-

ject of the donee of the power in the instrument of execution, and that being once ascertained, effect is given to it accordingly. If the donee of the power intends to execute and the mode be in other respects unexceptionable, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative. I agree that the intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation. If it be doubtful under all the circumstances, then that doubt will prevent it from being deemed an execution of the power. All the authorities agree that it is not necessary that the intention to execute the power should appear by express terms or recitals in the instrument. It is sufficient that it should appear by words, acts or deeds demonstrating the intention." The rule thus announced was adopted by the Supreme Court of the United States in *Lee* v. *Simpson*, 134 U. S. 572.

As indicated in the opinion just quoted, the appointment need not be by direct words. If the intention may be clearly inferred by just implication it will make the execution valid and operative. And in case an intention to execute the power is shown but the attempt to do so fails, resulting in a defective execution, equity will supply the defect in favor of persons for whom the donee of the power is under a moral or legal obligation to provide, as a purchaser or creditor, a wife, or a legitimate child. (2 Sugden on Powers, *89, *93; 1 Story's Eq. Jur. sec. 169.) Defects which are of the essence or substance of the power will not be remedied by equity, (*Breit* v. *Yeaton*, 101 Ill. 242,) but any defect not so of the essence or substance will be aided, as the want of a seal or witnesses, or of a signature. So a defect in the execution of the power by will when required to be done by deed will be aided, but not in the execution by an irrevocable deed when it ought to be done by will, for in the latter case the deed is contrary to the testator's

apparent intention that the appointment should continue in the control of the donee during his life. (Story's Eq. Jur. sec. 97.) A defective execution of a power by a wife in favor of her husband will not be aided in equity. (*Breit v. Yeaton, supra.*) Neither will equity interfere where there is a non-execution of a mere power, to compel its execution by the donee. *Gilman v. Bell,* 99 Ill. 144.

In this case Stewart Patterson executed a deed which conveyed to his wife an equitable estate in the property in controversy for her life. So long as he lived no further conveyance or assurance to her was necessary, but in case of his death before May 1, 1917, her estate would terminate with his life unless he made an appointment by will in her favor. He made a will, and in doing so took into consideration the claim of his wife upon him. He referred to the deed made a few days before as one of conveyance and appointments, whereby he had made independent and adequate provision for her. What did he mean by "appointments?" In law the word means the designation of the person to take the use of property. It has other meanings, but in the connection in which it was used in the will this is its natural meaning. The testator understood that by this deed he had made an appointment of the estate described in the deed to his wife for her life. The words "conveyance" and "appointments" were both used. The former was appropriate to describe the passage of the title during the life of the grantor; the latter to describe the designation of the person to whom the title should pass after the death of the grantor, under the deed of December 20, 1897. Having mentioned the conveyance and appointments and the consideration upon which they were made, he concluded the consideration of the subject by saying: "I hereby in this my will confirm said indenture of trust." If he had said, "Having some doubt whether the appointments in said indenture of trust are valid in law, I hereby in this my will confirm them," would there be any doubt that he meant by

this will to exercise the power of appointment reserved in the trust deed in favor of his wife? He may have had no doubt, but his language indicated an intention to make valid the appointments of the indenture of trust beyond any possibility of doubt.

The appellee argues that the preparation and execution of the various trust deeds and agreements which appear in the record, beginning September 23, 1914, and ending with the will on November 12, 1914, sharply brought to the attention of all the parties the fact that Stewart Patterson's interest in the property was subject to be divested, but that he could make a deed effective after his death by exercising the power of appointment under the deed of December 20, 1897, and that he could not do so in any other way. This is all true, and acting with this knowledge he did by his will confirm his deed of October 23, 1914, in all of its terms. Counsel say that "confirmation" is necessarily a narrow word; that it cannot create a greater estate than that created by the instrument confirmed, and that as used in the will it merely confirms the deed as a deed, with whatever effect the law gives to it as a deed. This is narrow, indeed. If the object of construction is to frustrate the intention it answers the purpose admirably. The estate mentioned in the deed is capable of conveyance by deed. The appointment, in its nature, is one which might be made by deed. It is invalid only because the instrument creating the power requires it to be exercised by will. Having been exercised by deed, the confirmation by will of the execution by deed is a valid execution of the power in equity. We have the will referring to the appointments of the deed; the knowledge of the testator that the appointments of the deed were invalid; his intention to confirm them so as to make them valid; his relation to his wife and his moral obligation to provide for her; his intention to do so; the rule that equity will aid a defective execution of a power where there is either a good or valuable consideration, and

the attempted execution of the power by the confirmation of the provisions of the deed. It is not a very long step for equity to aid the execution of this power if it needs the aid of equity. Whatever technical meaning a lawyer might give to the confirmation of a deed, to the ordinary testator the confirmation of his deed means the establishment of the title it purports to convey, and that is its meaning in this case.

The effect of the cases of *Hunt* v. *Evans,* 134 Ill. 496, and *Lander* v. *Lander,* 217 id. 289, is that a recital in a will of the execution of a deed of property by the testator was not a devise of the property and was ineffectual for the conveyance of title by the will. *Noble* v. *Tipton,* 219 Ill. 182, is in substance to the same effect. In *Lander* v. *Lander, supra,* the gift was sustained, not because of the reference to the execution of the deed but because the language of the will showed a present intention on the part of the testator to devise the property in question. Both in this case and in *Hunt* v. *Evans, supra,* the case of *Harris* v. *Harris,* 3 Ir. Eq. 610, is cited, in which the testator recited that he had made a settlement in favor of his wife and son which he regarded as ample and therefore gave nothing to his wife. It was held that this recital did not indicate an intention to devise anything to her, but the contrary, and she took nothing by the will although the settlement did not accomplish what the testator thought it did.

While the recital of a deed cannot give it an effect which it is legally impossible for it to have, the attempt in a will to confirm it and give it effect may show the testator's intention to accomplish by his will, in a legal manner, the purpose which the deed failed to execute. It was so in *Lander* v. *Lander, supra.* In *Bizzey* v. *Flight,* L. R. 3 Ch. Div. 269, the will contained this provision: "I confirm the settlement I have made by deed dated the 5th day of February, 1850, of certain portions of my property." The

chancellor said: "It has been contended that as the settlement was void the confirmation of it by will was wholly inoperative. Some of the moneys on mortgage, which were in turn comprised in the settlement, were rescinded by the testatrix in her lifetime and the bank shares were not duly transferred by her, but although the settlement was thus incomplete it was not incapable of being confirmed. * * * It was competent for Rebecca Hodges by a testamentary disposition to perfect that which was either void or voidable. This is not a case depending upon rigid rules of law. It is a mere question of the intention of the testatrix on the true construction of her will, * * * and the effect is that the confirmation of the settlement by the will operates as a specific bequest of the bank shares mentioned in the settlement, upon the trusts thereby declared."

Where one having a power of appointment by will, only, executes a deed which would be an exercise of the power of appointment but for the limitation of the manner of its exercise to a will, if the one having the power afterward makes a will clearly showing by that instrument his intention that the estates attempted to be created by the deed shall take effect, this will amount to the exercise of the power of appointment by the will.

The appellant here took nothing by the deed beyond the life of Stewart Patterson. The latter undertook by his will to confirm the appointments made by that deed,—that is, to make them valid and establish them. He had the power to make those appointments originally by will. He undertook to make them by will through a confirmation of the deed. He states that the appellant is not mentioned in his will as a devisee or legatee because he had made independent and adequate provision for her by deed, and after reciting her covenant as a part of the consideration for the deed he says: "I hereby in this my will confirm said indenture of trust dated October 23, 1914." No other intention has been suggested which paragraph 14 of his will

could express than making the estate described valid in the appellant. There was an evident attempt to "work by the power,"—to use the expression of the court in *Funk* v. *Eggleston, supra,*—which equity will aid if it is defective. Unless this paragraph operates as an appointment to make effectual the estate to the appellant mentioned in the deed it has no meaning, and a whole paragraph in a will can not be rejected in its construction unless no other course is possible.

It is objected that the appointment, if there is an appointment by the will, is conditional, and that the appellant has rejected the condition and asserted her right to dower. The condition is that the confirmation is subject to the faithful performance by Nannine Waller Patterson of the agreement to execute and deliver, from time to time, such other deed, release, conveyance or other instrument in writing as may be requested in order to effectuate such release, waiver and relinquishment and the purpose and intent of the provisions of the paragraph above quoted. There is no evidence that appellant has ever refused to comply with any request for further assurance. Her claim of dower in this suit is only in the alternative in case the appointment which she claims was made in her favor is not sustained.

The decree made an allowance to the Merchants' Loan and Trust Company, as trustee under the will of Stewart Patterson, for expenses incurred in the management of its trust under such will and for solicitor's fees and other expenses in the preparation and prosecution of this suit, to which the appellant has objected. She is not a beneficiary of the trust created by the will of Stewart Patterson, out of the principal or *corpus* of which the allowance is to be paid. She has therefore no legal interest in the matter of the allowance to the trustee of that trust, and cannot complain of the error, if any, in making that allowance since she is not injuriously affected by it.

The decree is reversed and the cause is remanded to the circuit court, with directions to enter a decree which shall conform to the views of this opinion.

*Reversed and remanded, with directions.*