COMMISSIONER OF INTERNAL REVENUE v. MAGUIRE et ux.

No. 7049.

Circuit Court of Appeals, Seventh Circuit.

March 5, 1940.

Rehearing Denied May 21, 1940.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. P. Wenchel, Charles E. Lowery, and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., for petitioner.

Francis E. Baldwin, of Chicago, Ill., (Albert H. & Henry Veeder, of Chicago, Ill., of counsel), for respondents.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This is a petition to review an order of the Board of Tax Appeals, in a proceeding for determination of an alleged deficiency in respondent's income tax for the calendar year 1930. The Commissioner of Internal Revenue had asserted a deficiency of $71,429.62. The Board on March 29, 1939 entered its order finding a deficiency in the amount of $46,443.60.

Gustavus Swift, a resident of Illinois, died on March 29, 1903. He left surviving him his widow and nine children, one of whom, Ruth S. Maguire, and her husband are the respondents herein. He left a will which was duly admitted to probate in the Probate Court of Cook County, Illinois, on May 2, 1903, in which he devised and bequeathed to his executors and trustees in trust his residuary estate, to hold the same and to pay certain payments annually commencing with the date of his death and continuing until the final distribution of his estate.

By clause 8 of his will the trustees were directed to distribute the corpus not less than ten nor more than twenty years after his death among his widow and children in certain specified proportions.

On December 11, 1905 the Probate Court of Cook County entered an order approving the final account of and discharging the executors, and directed them to turn over to themselves as trustees the balance of the estate in accordance with the provisions of the will. Thereafter, the trustees continued to administer the estate as such trustees until March 29, 1923, when the securities received by the trustees, together with other securities subsequently purchased by them, were distributed in kind to the respondent Ruth S. Maguire. Thereafter in 1929 and 1930 certain of the securities were sold.

The taxing statute provides that in the case of property *acquired after 1913* the basis for determining gain or loss is cost. § 113(a), Revenue Act of 1928, c. 852, 45 Stat. 818, 26 U.S.C.A. Int.Rev.Code, page 380. However, as to real property passing by will and personal property specifically bequeathed, the basis is the value of the property at the death of the testator; except that as to personal property passing by general bequest, the basis is the "value of the property at the time of the distribution to the taxpayer." § 113(a) (5).

The taxing statute also provides that in the case of property *acquired before 1913* the basis is cost or 1913 value, whichever is greater. § 113(b). However, as to real property passing by will and personal property specifically bequeathed, the basis is value at death or 1913 value, whichever is greater; except that as to personal property passing by general bequest, the basis is value at distribution to the taxpayer or 1913 value, whichever greater. § 113(b).

In the instant case the property in question was personal property, consisting of shares of capital stock of certain corporations, certain accounts and notes receivable. Some passed under the will by gen-

eral bequest, and was distributed by the executors to the testamentary trustees in 1905. Some property was purchased by the trustees between 1905 and 1913, and some was purchased between 1913 and 1923. In 1923 the testamentary trustees delivered the properties to the taxpayer.

The taxpayer reasons that the property in question was property acquired by will, and therefore the basis is its value at the time of distribution to the taxpayer. In this regard she contends that although some of the property was purchased by the testamentary trustees, it nevertheless was acquired under and pursuant to the will.[1] On the other hand, the Government argues that the property subsequently purchased by the trustees was acquired by purchase. As to this property the Government contends that the basis is its cost to the trustees.[2]

This court must answer two questions in this case: (1) To what does the language "distribution to the taxpayer" refer—distribution by the estate or delivery by the trust? (2) What is the proper basis of the properties received by the taxpayer? In this connection the Board of Tax Appeals agreed with the taxpayer's position, and decided that the basis was the value of the properties in 1923, at which time there was "distribution to the taxpayer."

The controversy here is over the proper construction of a section of the 1928 revenue statute to the effect that in the case of personal property passing by general bequest, the basis is the "value of the property at the time of the distribution to the taxpayer." The term "distribution" might refer to distribution by the estate. Jenkins v. Smith, D.C., 21 F.Supp. 433; Dissenting opinion, Commissioner v. Libbey, 1 Cir., 100 F.2d 458. Or it might refer to

delivery by the testamentary trust. Harbison v. Commissioner, 26 B.T.A. 896; Libbey case, supra.

■■ In the light of the conflict of thought on this point, we are not convinced that the express language of the statute is unambiguous and definite, as counsel for taxpayer would have us believe. Every statute is to be construed with reference to its intended scope and to the purpose of the legislature in enacting it; and where language is used which admits of more than one meaning, it is to be taken in such a sense as will conform to the scope of the act and carry out the purpose of the statute, being mindful, however, that it is not permissible under the pretense of interpretation to make a law, either by extension or restriction, which shall depart from the legislative intent. In such a situation, resort to aids outside the language itself is necessary. Brown v. Duchesne, 60 U.S. 183, 194, 15 L.Ed. 595; Helvering v. New York Trust Co., 292 U.S. 455, 464, 54 S.Ct. 806, 78 L.Ed. 1361; Helvering v. Morgan's Inc., 293 U.S. 121, 126, 55 S.Ct. 60, 79 L.Ed. 232. For instance, often one finds the answer to the controversy in legislative history.

Legislative History. The 1921 to 1926 Acts provided that the basis of property passing by will was its value at the time of such "acquisition." Considerable difficulty was experienced in determining the date of acquisition, particularly in cases where the property was sold by the estate of the decedent. See Bankers' Trust Co. v. Bowers, D.C., 23 F.2d 941; cf. McKinney v. U. S., 62 Ct.Cl. 180. So the language was changed, and as changed incorporated in the 1928 Act. In this connection the legislative comments are pertinent.

---

[1] Taxpayer claims that the date of acquisition, i. e., before or after 1913, is immaterial in the instant case. In saying this, taxpayer proceeds on the theory that no matter when the property was acquired, the property being acquired by virtue of the will takes the basis given for property passing by will, and in this case the following occurs: if the property was acquired after 1913, the basis is the value at time of distribution (claimed to be the year 1923 when the property was delivered to the taxpayer), §. 113(a)(5); if acquired before 1913, the basis is still the 1923 value (because greater than 1913 value), § 113(b). Even if the Government agreed as to the point

on acquisition, it disagrees as to the date when there is distribution to the taxpayer, claiming the date to be the year 1905 when the estate was closed.

[2] In greater detail the Government's contention is as follows. As to property purchased between 1905 and 1913, § 113 (b) applies: the basis is cost or 1913 value whichever greater. As to property purchased between 1913 and 1923, § 113 (a) applies: the basis is cost. As to these properties, each is acquired by the taxpayer in the year the trustees purchased it, and the cost in each instance is the cost to the trustees in the year of purchase.

The House bill provided that the basis of property passing by will should be its value at the death of the testator, since the "value on the date of death affords an equitable and more readily determinable basis." Ways and Means Committee Report, No. 2, 70th Cong., 1st Sess., p. 18 (1928 Act). The House bill thereby disposed of the confusion caused by the McKinney case, supra, by supplying the value-at-death basis to sales of property by the estate, the same basis as used where the property is sold by the beneficiary.

The Senate, however, deemed the House bill weak in one respect, in that it failed to take care of the situation where "the executor, pursuant to the terms of the will, may purchase property and distribute it to the beneficiaries, in which case it is impossible to use the value at the decedent's death as the basis * * * for the decedent never owned the property." Finance Committee Report, No. 960, 70th Cong., 1st. Sess., p. 26 (1928 Act). Accordingly, the Senate amended the House bill.

As amended, the bill provided that the basis of property passing by will should be value-at-death, except that the basis of personal property passing by general bequest should be the value "at the time of the distribution to the taxpayer." From what has been said, it would appear that Congress was not looking beyond the distribution by the estate. Lending to this appearance is the weight given to the value-at-death rule and the reason given for the exception thereto. It is also easy to conclude that acquisition by the beneficiary was a factor in the minds of the legislators.

We quote again from the legislators: "In these cases it may be said, as a matter of substance, that the property for all practical purposes vests in the beneficiary immediately upon the decedent's death, and therefore the value at the date of death is a proper basis * * *. The same rule is applied to real and personal property transmitted by the decedent where the sale is made by the executor. In all other cases the basis is the fair market value * * at the time of distribution to the taxpayer. The latter rule would obtain, for example, in the case of personal property * * * transmitted to the beneficiary * * * by general bequest * * *. It would also apply in cases where the executor purchases property and distributes it to the beneficiary." Conference Report, No. 1882, 70th Cong., 1st. Sess., p. 14 (1928 Act).

The change in language was incorporated in the 1928 and 1932 Acts, but the difficulty in administering the section continued. Now the difficulty was in the construction of the words "time of distribution." However, in the meantime, the former language "time of acquisition" had been judicially defined to mean "time of death" of the decedent. Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457. The reason for the 1928 change existed no longer, and in 1934 Congress reverted to the former language to the effect that in cases where property is transmitted at death the basis shall be the value at the "time of such acquisition."

Legislative comments in 1934 indicated that the change in the 1934 law was made because the reason for the 1928 language had disappeared and some evils had appeared.[3] Thus, the legislators expressed

---

[3] We quote material parts from the 1934 legislative reports:

"Thus, where a trustee acquires personal property by general bequest, the basis of the property, on a sale by him, is the value at the time of distribution to him. The basis to the executor, in all cases, is the value of the property at the date of decedent's death.

"Often times, the executor and trustee under a will are one and the same person. Thus, in the case of a general bequest of personal property, he is in a position to make use of one basis of valuation or the other * * *. The trustee, of course, may use a later basis than the executor, and where it is desired to sell * * * the executor-trustee may determine whether it would be most advan-

tageous to sell as executor or trustee. Where the personal property has increased in value * * * the property may be distributed to the trustee, who may use the higher basis * * * thereby diminishing the taxable increment * * *." Finance Committee Report, Senate, No. 558, 73rd Cong., 2nd Sess., pp. 34–35 (1934 Act).

The same committee added that the 1934 change made it "clear that if the property of the decedent is sold by the executor or other representative of the estate of the decedent, the basis * * * is the fair market value at the death of decedent, which is the same basis adopted * * * when the property is sold by the beneficiary."

concern because the existing law permitted situations where an executor-trustee under a will could sell property either before or after distribution to himself as trustee, thereby avoiding taxable gains which accrued between the death of the testator and the distribution by the estate. No concern, however, was expressed over the consequences inherent in situations which would result from considering delivery by the trustee as the "distribution" meant by the tax statute, thereby permitting avoidance of tax gains accruing between death and distribution by the trustee. The inference is strong that Congress was not looking beyond the distribution by the estate, when it wrote the language in controversy.

*"Distribution to the Taxpayer."* As already mentioned, one often finds the meaning of words by reading their origin and purpose. The bare words "distribution to the taxpayer" tell a plain story when placed in their context and defined in the light of their history. In providing the tax basis for property transmitted at death, Congress did not intend the valuation date to go beyond the time when the estate was closed. The phrase relates to the time when the property is distributed by the executor.

■ Nor is logic offended by our construction. That the distribution by the estate be to a trustee for the use of the taxpayer in some cases, rather than to the taxpayer himself in every case, matters little. As a matter of logic, where the taxpayer has a substantially vested equitable ownership at the time of distribution to the trustee, then distribution to the trustee is distribution to the taxpayer. The subsequent delivery by the trustee to the taxpayer merely transfers the legal title. Croxall's Lessee v. Sherrerd, 72 U.S. 268, 281, 18 L.Ed. 572; Merchants' Loan & Trust Co. v. Patterson, 308 Ill. 519, 139 N.E. 912.

■ We conclude, therefore, that the phrase "time of distribution to the taxpayer" as used in § 113(a)·(5) of the 1928 Act means time of distribution by the decedent's estate, and it follows consequently that the time of such distribution in the instant case was December 11, 1905. Moreover, the basis of the property coming to the taxpayer from the executors, through the testamentary trustees, is the 1905 value or the 1913 value of such property, which ever was greater. § 113 (b).

*Basis of Property Purchased by Trustees.* In the instant case the property in question consists of property transmitted at death and of property subsequently purchased by the trustees under powers given in the will. The taxpayer contends that although some of the property was purchased by the trustees, nevertheless she acquired the properties by will, and therefore the properties take the basis as given in § 113(a) (5). Fleming v. Commissioner, 36 B.T.A. 773, 777; see footnote 1.

■■ That the taxpayer's right in the properties has its source in the provisions of the will, is certain; but certain too are we that this factor does not control the application of the basis section, § 113(a) (b). For our conclusion we depend considerably on the history that has been related above. It is plain therefrom that the legislators distinguished between specific property owned by the decedent and specific property purchased after decedent's death by the trustee. And they also deemed important the time when these properties were acquired.

For our conclusion we also depend considerably on the statutory scheme. In general the statute applies a cost basis to property acquired by the taxpayer.[4] To some situations the statute applies a different basis, e. g., § 113(a) (5). For instance, in the instant case, the statute makes an exception to the cost basis. This exception, however, applies only to "property transmitted at death." To us this means that the exception, i. e., the value-at-death and value-at-distribution basis, is confined to the specific property owned by the testator at his death.

We conclude, therefore, that property purchased by the trustees is not "property transmitted at death," and that as to it the basis is as described in footnote No. 2. In this connection we may add the following explanation. Where the identical property distributed to the trustees is later delivered to the taxpayer in kind, it may be said that under the statute the taxpayer acquired the property "by will." However, where the trustees buy different property after the distribution, and this property is delivered to the taxpayer, it

---

[4] A more accurate statement would mention that as to property acquired before 1913, the basis is cost or 1913 value, whichever greater, § 113(b).

may be said that it was acquired by pur-
chase and not "by will."

The order of the Board of Tax Appeals
is reversed, and the case remanded for
further proceedings not inconsistent with
the views herein expressed. It is so or-
dered.

Reversed and remanded.