*In re* ESTATE OF BRUCE MacLEISH, Deceased.—(THE NORTHERN
TRUST COMPANY *et al.*, Petitioners-Appellees, *v.* HUGH MacLEISH,
Respondent-Appellant.)

First District (1st Division) No. 60556

Opinion filed February 2, 1976.—Rehearing denied March 3, 1976.

Nat M. Kahn and Robert M. Bollman, both of Chicago, for appellant.

Sidley & Austin, of Chicago (Alice M. Bright, J. Robert Barr, and Robert A. Malstrom, of counsel), for appellees.

Mr. JUSTICE SIMON delivered the opinion of the court:

This appeal is by Hugh MacLeish (respondent), adopted son of Bruce MacLeish (testator) from a portion of an order and decree entered by the probate division of the circuit court on January 29, 1974 (referred to in this opinion as the "1974 order"). In the portion of the 1974 order contested by the respondent the circuit court found that a power of appointment granted to the testator by his wife's will had been effectively exercised. Although, as noted below, the respondent contends that the court should have deferred decision on whether the testator

had exercised the power of appointment, the core issue in this appeal is whether the court's decision that he had was correct. We address that question first, acknowledging that the respondent's position is that it is improper for this court, as it was for the circuit court, to resolve this issue at this state of the proceedings.

The issue arose when the executors filed a petition in the circuit court for instructions alleging that problems concerning the collection and distribution of the assets of the estate necessitated the court's guidance. All of the parties to the proceeding in the circuit court, except the respondent, admitted in their pleadings that the testator effectively exercised the power of appointment. The respondent denied that the testator had complied with the requirements of the will which granted the power. The respondent filed a motion to vacate the portion of the 1974 order relating to the exercise of the power of appointment, and his appeal is from the order denying his motion to vacate. Administration of the testator's estate is continuing in the probate division, and the circuit court certified in the 1974 order that there is no just reason for delaying enforcement of or appeal from it.

The facts which relate to the exercise of the power can be stated briefly. Elizabeth Moore MacLeish, wife of the testator, predeceased him. She executed a first codicil to her will which added a new Article Va immediately following Article V and before Article VI of her will. Article Va created Trust One, the assets of which are the subject matter of this appeal. Paragraph (b) of Article Va of Mrs. MacLeish's will provided:

> "(b) Upon the death of BRUCE MacLEISH the Trustee shall distribute the entire remaining principal of Trust One, and any accrued and undistributed income therefrom, as BRUCE MacLEISH shall direct and appoint in and by his last Will expressly exercising such power, either to his estate or to or for the benefit of any person or persons, in such proportions and such manner and either free of trust or upon such trusts and conditions as he shall direct. Such power shall be exercisable by BRUCE MacLEISH alone and in all events. In default of such express testamentary direction and appointment, or insofar as it shall not extend or become effective, the Trustee shall add the remaining principal of Trust One and any accrued and undistributed income therefrom to the principal of Trust B created under Article VI of this Will, to be held, administered and disposed of in all respects as a part thereof in accordance with the terms and conditions governing Trust B upon the death of BRUCE MacLEISH."

The testator died on October 7, 1973, leaving as his only heirs, the

respondent and the surviving children of his daughter, Jean MacLeish Dern, who had predeceased him. Article II of his will, which was admitted to probate on October 24, 1973, provided:

"Under the provisions of paragraph (b) of Article V added to the Will of my wife, ELIZABETH MOORE MacLEISH, by the First Codicil thereto, executed the 22nd day of January, 1961 and duly admitted to probate by the Probate Court of Cook County at Chicago, Illinois, on the 8th day of February, 1961, I am given the power to appoint the entire remaining principal of Trust Number One and any accrued and undistributed income therefrom by my Will. Expressly exercising said power, I hereby appoint all of said assets to my estate and direct the Trustee of Trust Number One under the Will of Elizabeth Moore MacLeish to distribute the principal and any accrued and undistributed income of Trust Number One to the Executors of my Will."

■■ For an exercise of a testamentary power of appointment to be valid and effective, two requirements must be satisfied. First, the intention of the testator to exercise the power must be shown. Second, there must be compliance with any conditions established by the donor for its exercise. *Northern Trust Co. v. House* (1954), 3 Ill. App. 2d 10, 120 N.E.2d 234.

The testator's intention to exercise the power of appointment is clear. After describing the power given to him under his wife's will, Article II of his will provides that "expressly exercising said power, I hereby appoint all of said assets to my estate * * *." Consideration of the second requirement calls for an examination of the provision of the codicil granting the power. The only conditions established by Mrs. MacLeish were that the power be exercised by her husband's will, and that the exercise be express. The requirement for an express exercise of the power was obviously intended to assure that the power would be exercised as a deliberate, considerate act, and to prevent an inadvertent exercise of the power by a residuary clause. The power was exercised by the testator by his will. Article II not only referred to an express exercise of the power, but went even further by describing the power as being in paragraph (b) of Article V added to the will of his wife "by the First Codicil," specifying the date of the execution of the codicil and the date and place of its admission to probate, and describing the scope of the power and the assets over which it was to be exercised. The language used by the testator in his will is almost identical with the language used by Mrs. MacLeish in granting the power. The testator, therefore, expressly exercised the power.

The only defect the respondent points to in the exercise of the power

was testator's reference to paragraph (b) of Article V, while the power granted to him was actually set forth in paragraph (b) of Article V*a* of Mrs. MacLeish's will. The respondent argues that the exercise was ambiguous because of the testator's reference to Article V instead of Va despite the otherwise clear identification of the power. The testator referred to the addition of Article V to Mrs. MacLeish's will be a first codicil of the stated date, but there was no Article V added to her will by the described codicil. Neither Article V nor any other provision of Mrs. MacLeish's will other than Article Va added by the first codicil granted any power of appointment. Nor did Mrs. MacLeish's will require that in exercising the power the testator make specific reference to Article Va. Excluding the reference in the testator's will to Article V of his wife's will, the rest of the description in Article II of his will is more than adequate to identify the power and expressly exercise it.

■■■■ ▪ Where the intention of the testator is clear and the formalities set up by the donor have been met, an exercise of a power should not be held void because of an insignificant ambiguity in the exercise. To do so emphasizes formality and technicality over substance. It is permissible to strike, insert or transpose words to determine and effectuate the intention of a testator. (*Burkholder v. Burkholder* (1952), 412 Ill. 535, 107 N.E.2d 729; *Hunt v. Mitchell* (1951), 409 Ill. 321, 99 N.E.2d 347; *Cahill v. Michael* (1942), 381 Ill. 395, 45 N.E.2d 657.) A basic principle of will construction is that a testator's intent must control and without adopting an unreasonable or absurd construction, a court should harmonize clauses which appear inconsistent or repugnant so as to give effect to a testator's general intention. (*Peters v. Gebhardt* (1955), 6 Ill.2d 534, 129 N.E.2d 731.) A devise or bequest should not be voided because of errors in describing the subject matter provided enough remains to show what it was that was intended. (*Stevens v. Felman* (1930), 338 Ill. 391, 170 N.E. 243.) Equity will remedy any defect which is not of the essence, but is only technical. (*Merchants' Loan & Trust Co. v. Patterson* (1923), 308 Ill. 519, 139 N.E. 912.) Applying these principles, there is no difficulty in construing Article II of the testator's will as referring to Article Va of Mrs. MacLeish's will since the omission of the letter "a" was obviously an oversight or a typographical error. There is also no difficulty in reading Article II of Mr. MacLeish's will as if it did not contain the words "* * * of paragraph (b) of Article V * * *." Either construction permits this court to follow the clear intent of the testator, and hold, as we do, that the power of appointment was validly and effectively exercised.

■■ The respondent also argues that there was insufficient evidence to support the circuit court's determination that the power had been prop-

erly exercised. The only point respondent made on the proper construction of the will was that Article II referred to Article V instead of Article Va of Mrs. MacLeish's will. The circuit court examined both wills to determine the formalities required by the donor and the intent of the testator. The language of the wills was adequate to support the finding set forth in the 1974 order. If respondent had other evidence indicating that the intent of the testator was not to exercise the power, he had ample opportunity to introduce that evidence at the hearing on the petition of the executors.

■■ We turn now to the other objections raised by the respondent. He argues that the portion of the 1974 order to which he objected went beyond the scope of the oral ruling by the circuit court judge and was, therefore, unauthorized. The court stated in the oral announcement of its decision that the testator had exercised the power and also instructed the trustees of Trust One to turn over the assets to the executors. That the written order more fully expressed the court's ruling than its oral statement does not render the written finding unauthorized or improper. The court signed the 1974 order, and the action of the court can only be shown by its written records. See *People ex rel. Waite v. Bristow* (1945), 391 Ill. 101, 62 N.E.2d 545.

The respondent next contends that the finding that the power was effectively exercised was beyond the scope of the petition for instructions, and that it was unnecessary and premature for the court in giving the executors the directions they requested to decide whether the power had been exercised. We do not find this argument persuasive because that decision was the keystone of the petition of the executors for instructions. That petition, filed on December 28, 1973, 3 months and 21 days after the testator's death, alleged that uncertain conditions in the national economy had caused a substantial decline in the value of the securities forming the bulk of his estate. The declining stock market conditions and the extreme difficulty of predicting future trends in the market were testified to at the hearing on the petition by two vice presidents of the co-executor, the Northern Trust Company. If the exercise of the power was valid, the assets of Trust One under his wife's will became part of the testator's residuary estate. His will required that $572,000 in general legacies be paid in cash or in securities as valued for Federal estate tax purposes. In addition, bequests in the amount of $300,000 were to be paid out of the residuary estate in securities as valued for estate tax purposes. Under the Federal Estate Tax Law, the executors could elect to value any securities sold or distributed during the 6 months following death at date-of-death values or at their

value on the date of sale or distribution. Because of the decline in the value of the securities comprising both the appointed assets and the testator's estate between the date of his death and the petition for instructions, valuation at date of death would have resulted in a higher Federal estate tax and would have been an impractical election. The cash in the estate was less than $50,000 while cash requirements for taxes, executors' and attorneys' fees and other expenses of administration were estimated to be in excess of $1,300,000 with requirements for payment in excess of approximately $1,000,000 in the 6 months following the filing of the petition for instructions. The testator's assets were clearly insufficient to cover taxes and expenses of administration and to fund the bequests in the amount of $872,000 provided for by his will. However, with the addition of the appointed assets comprising Trust One, his estate would be sufficient to pay taxes and expenses and all bequests and, in addition, in accordance with his will provide a residue for the benefit of an existing trust as well as for the respondent. The instructions the executors sought by their petition were for the purpose of obtaining the immediate delivery of the appointed assets and an authorization for immediate distribution of the legacies provided by the will in order to spread the risk of further stock market decline among all beneficiaries, to provide flexibility in selling securities to meet current and future cash obligations during a period of instability in the stock market, and to preserve a portion of the estate for residuary beneficiaries. Only by funding the legacies with securities could the value of the securities be fixed for Federal estate tax purposes, thus guaranteeing assets for the residuary trust takers in the event the stock market decline continued.

The exercise of the power of appointment was an essential ingredient of the testator's testamentary plans. The program recommended by the executors in their petition for instructions could not be accomplished without immediate distribution of the appointed assets to them. Distribution of the appointed assets, in turn, required the threshold decision as to whether the power of appointment had been validly exercised.

The respondent next argues that the circuit court should not have decided whether the power of appointment was effectively exercised because there was no specific or general prayer for relief which could be read as requesting a decision on this issue. The executors asserted by the following allegations in their petition for instructions that the power had been validly exercised:

> "It is the position of the Executors that the exercise of said power of appointment fully complies with the Will of Elizabeth Moore

MacLeish and that the successor Trustees should be required to deliver the cash and securities held in said Trust to the Executors forthwith."

By specifically denying that the power was validly exercised, the respondent raised the issue in his own answer.

Moreover, the petition for instructions contained a general prayer for instructions so that the executors could properly discharge their duties to collect, conserve and distribute the assets as provided by the will, and this was broad enough to include determination of whether the power had been effectively exercised. In addition, the petition requested the court's instructions concerning which securities to sell, specifically including those in Trust One, and how to fund the general and residuary legacies. These instructions could not be given by the court without determining whether the appointed assets in Trust One were a part of the testator's estate. In any event, the Civil Practice Act expressly provides that the prayer for relief does not limit the relief which the court may grant. (Ill. Rev. Stat. 1973, ch. 110, §34.) We conclude that the petition for instructions clearly raised the issue of the validity of the exercise of the power of appointment.

The respondent's final contention is that the circuit court's interpretation of Article II of the testator's will was premature and void until the period for contesting the will had expired. He also advances the corollary contention that the effect of his filing on March 1, 1974, within the period permitted by statute, an action ocntesting his father's will was to nullify the decision of the circuit court relating to the exercise of the power.

■■ The position the respondent advances would in effect require that the administration of an estate come to a complete halt upon the filing of a will contest if the administration requires construction of any provisions of the will. The law not only does not support this contention, but is to the opposite effect. A will admitted to probate is *prima facie* valid until set aside. (*Sternberg v. St. Louis Union Trust Co.* (1946), 394 Ill. 452, 459, 68 N.E.2d 892; *Smith v. Smith* (1897), 168 Ill. 488, 48 N.E. 96.) The executor must fulfill his duties and responsibilities until he is discharged from office. The executor has a fiduciary duty to collect and preserve the assets of the estate and would be remiss in failing to do so. (*In re Estate of Busby* (1937), 288 Ill. App. 500, 6 N.E.2d 451.) This duty ran to the residuary beneficiaries as well as to the general legatees, and the former may have received nothing had the executors not taken action which is the subject of this appeal requesting a construction of the will to enable them to collect the assets appointed to them. There is no requirement in the law that executors delay taking

action required to conserve the estate for 6 months to see if a will contest is going to be filed. *Sternberg v. St. Louis Union Trust Co.* does not, as the respondent contends, establish the rule that upon the filing of a will contest the order admitting the will to probate is in effect vacated. All *Sternberg* holds in this respect is that when "*  *  * a suit is brought  *  *  * to contest the will, in that proceeding the order admitting it to probate has no force or effect  *  *  *," and in such a proceeding, "[a]ll questions concerning the validity of the will are tried *de novo*." 394 Ill. 452, 459.

Consistent with *Sternberg*, the 1974 order did not constitute a decision that the testator's will was valid. The use of the word "valid" in the portion of the 1974 order objected to by the respondent referred only to the testator's exercise of the power of appointment and its significance was only to indicate that the power was exercised in a legally proper manner. In the case of a will contest, the use of the word "valid" in the 1974 order would have no significance.

The statutory law is consistent with the view that if necessary for an orderly administration of an estate the will may be construed during the period provided for filing a will contest. Letters testamentary are revoked "[w]hen a will which has been admitted to probate is set aside  *  *  *." (Ill. Rev. Stat. 1973, ch. 3, §286.) If the legislature intended that either the administration of an estate be stopped or executors of a will removed from office upon filing of a will contest, the statute would have so provided. Instead the statute allows the executor to continue to act, and all actions taken by an executor prior to revocation of his letters are valid. (Ill. Rev. Stat. 1973, ch. 3, §287.) The respondent's argument also completely nullifies section 292 of the Probate Act (Ill. Rev. Stat. 1973, ch. 3, §292), which permits distributions within the 6-month period. That section is *only* operative during the period in which a will contest may be instituted, and its very existence emphasizes that the administration of the estate is to proceed without delay during that period.

The respondent acknowledges that the executor continues to be responsible for administration of an estate while a will contest is pending. However, he urges that in this setting the executor is precluded from requesting instructions from the court which may require an interpretation of a provision in the will. We cannot accept this suggestion because where expeditious administration and conservation of the estate require a finding with respect to the meaning of the provision in question, a request by the executor for a judicial determination is not inconsistent with the pendency of the will contest. To the extent that isolated cases from other jurisdictions suggest any impropriety in judicial

interpretation of provisions of a will during the time an attack on the will is taking place, they are decisions which are distinguishable from the circumstances of this case and, therefore, they cannot safely be looked to for guidance. In general, they deal with different factual situations, different procedural questions, different court structures, and attempts to seek construction at different stages of the probate proceeding than in this case.[1]

■■ The respondent's contention that the administration of an estate must be held in abeyance until the period for contest expires must, therefore, be rejected. We hold that the finding in the 1974 order that the power was effectively exercised was neither premature nor void, that the finding as well as the admission of the will to probate were not nullified by the filing of a will contest and that even during the period of the will contest the obligation of the executors to collect the estate's assets, proceed with the settlement of the estate and take all acts necessary to protect all the beneficiaries continued. Deferring disposition of the assets of Trust One until the will contest was disposed of, as the respondent now argues should have been done, might have substantially diminished the residuary estate, and the 1974 order reflects the concern of the circuit court that the assets be collected promptly in order to protect all beneficiaries.

It is noted that the respondent initially argued in his brief that the circuit court erred in waiving surety on refunding bonds it ordered the distributees of the assets of Trust One to provide. The notice of appeal, a jurisdictional requirement, stated only that the respondent was appealing the alleged error in including in the 1974 order the finding with respect to the exercise of the power of appointment, and contained no reference to any error in regard to the bonds. We have since denied the respondent's motion to file an amended notice of appeal and during oral argument his counsel advised this court that the respondent was waiving any question with respect to surety on the refunding bonds. We, therefore, do not reach any decision with respect to this issue.

Judgment affirmed.

GOLDBERG, P. J., and BURKE, J., concur.

---

[1] See *Trapp v. Trapp* (1962), 20 Ohio Op. 2d 345, 90 Ohio Abs. 74, 185 N.E.2d 85; *Sheltering Arms Hospital v. First & Merchants' National Bank* (1957), 199 Va. 524, 100 S.E.2d 721; *In re Heitholt's Estate* (1950), 202 Okla. 351, 213 P.2d 865; *Ball v. Cooter* (1947), 185 Tenn. 631, 207 S.W. 2d 340.