Alison Leilani ROBERTS, Plaintiff,

v.

The NORTHERN TRUST COMPANY, as trustee of the Marjorie Lewis Griffing Trust, dated April 3, 1963, Honolulu Academy of Arts, Queen's Medical Center, Bishop Trust Company, Ltd., as Executor of Last Will & Testament of Robert P. Griffing, Jr., and Unborn Descendants of Alison Leilani Roberts, Defendants.

No. 81 C 0040.

United States District Court,
N.D. Illinois, E.D.

March 1, 1982.

Richard J. Hoskins, Allan J. Sweet, Charles D. Fox IV, Schiff, Hardin & Waite, Chicago, Ill., for plaintiff.

Gary L. Prior, Robert T. Palmer, McDermott, Will & Emery, Jill Ann Coleman, Levy & Erens, Stephen P. Kenney, Lord, Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This is a declaratory judgment action in which plaintiff, Alison Leilani Roberts ("Roberts"), seeks a determination that her father, Robert P. Griffing ("Mr. Griffing"), by his last will and testament, effectively exercised his testamentary power of appointment over a marital trust established by his late wife and Roberts' mother, Marjorie Lewis Griffing ("Mrs. Griffing"). Defendant, The Northern Trust Company ("Northern"), which is trustee of Mrs. Griffing's trust, has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Defendants, Honolulu Academy of Arts, Queen's Medical Center, and the Unborn Descendants of Alison Leilani Roberts, all contingent remaindermen of the trust established by Mrs. Griffing, have joined in the motion for judgment on the pleadings.

■ On a motion for judgment on the pleadings, all well-pleaded factual allegations in the complaint are deemed admitted, and the only question is whether the movant is entitled to judgment as a matter of law. For purposes of this motion, therefore, defendants admit the following facts set forth in Roberts' complaint and attached exhibits.

In 1963, Mrs. Griffing executed a trust agreement, subsequently amended in 1973, under which Mr. Griffing received a trust ("the marital trust"). Mr. Griffing was given a testamentary general power of appointment over the corpus of the marital trust pursuant to § 6(c) of the trust agreement:

On the death of my husband, Robert P. Griffing, Jr., the principal of the fund named for him and all accrued or undistributed income thereof shall be distributed ... as my husband may provide and appoint by will specifically referring to this power to appoint.

The trust agreement further provided that, in the event of Mr. Griffing's failure to exercise his power of appointment, the corpus of the marital trust would remain in trust for Roberts ("the daughter's trust"). Roberts would receive the income from the trust principal unless the trustee (Northern) deemed it advisable to accumulate the income or invade the principal in the interest of Roberts.

Mrs. Griffing provided that Roberts would receive a special testamentary power of appointment over the daughter's trust. If she failed to exercise this power of appointment, the corpus would go to her living descendants or, if there were none, to the Honolulu Academy of Arts and the Queen's Medical Center.

Paragraph 25 of Mrs. Griffing's trust agreement provided that "[t]he laws of Illinois shall govern the interpretation and validity of the provisions of this instrument and all questions relating to the management, administration and investment of the trusts hereby created."

Mr. Griffing died testate on August 10, 1979. He partially exercised his power of appointment over the marital trust by making bequests to certain individuals pursuant to the following language in Article VIII of his will:

I give, devise, and bequeath from ... the Robert P. Griffing, Jr. Trust ... under my power to appoint as provided for by Paragraph 6(c) of the AMENDMENT TO THE TRUST AGREEMENT OF THE MARJORIE LEWIS GRIFFING TRUST DATED April 30, 1963, amended May 21, 1973, the following amounts to the individuals designated . . . .

Roberts was not included among the beneficiaries specified in Article VIII. These bequests did not, however, exhaust the available corpus of the marital trust, and in Article X of his will, Mr. Griffing left the remainder of his estate to Roberts as follows:

I give all the remainder of my estate, and any property over which I may possess any power of appointment by Will or otherwise, hereinafter called by "residuary estate", to my daughter, ALISON LEILANI GRIFFING, absolutely, if she shall survive me.

According to ¶ 13A of the second amended complaint,[1] Mr. Griffing "intended to exercise completely the power of appointment which he had over the marital trust and thereby terminate the marital trust," (Roberts Comp. ¶ 13A).

Northern and the other defendants contend that they are entitled to judgment in their favor because the pleadings conclusively show that Mr. Griffing failed to comply with one of two requirements under Illinois law for the effective exercise of a testamentary general power of appointment, that is, strict compliance by the donee (here, Mr. Griffing) with any conditions imposed by the donor of the power of appointment (here, Mrs. Griffing). Since Mr. Griffing did not specifically refer in Article

---

1. In her original and first amended complaint, Roberts did not allege that Mr. Griffing intended to bequeath the remainder of the marital trust to her, and Northern's supporting memorandum thus focused to a large extent on lack of intent as a basis for judgment. In response, Roberts moved to convert Northern's motion for judgment on the pleadings into one for summary judgment and filed several affidavits purporting to show Mr. Griffing's intent. This court denied Roberts' motion and Roberts subsequently amended her complaint to allege intent. The court thus does not consider materials outside the pleadings for purposes of this motion, but assumes intent on the basis of the pleadings.

X of his will to the power of appointment granted him under Mrs. Griffing's trust agreement, Roberts is not entitled to the remaining corpus of the marital trust, according to defendants.

Roberts makes two arguments in response. First, she contends that Mr. Griffing complied with the conditions on the exercise of his power of appointment by referring specifically to it in Article VIII of his will and generally, in Article X, to any power of appointment. Alternatively, she argues that compliance with conditions on the exercise of a power of appointment is not an independent requirement of Illinois law.[2] Rather, she interprets this requirement as simply one factor to consider in deciding whether the general rule that the donee must intend to exercise the power has been satisfied. Because she has alleged that Mr. Griffing intended to exercise his power of appointment in her favor, Roberts says defendants' motion must be denied.

The first question presented is what law is to be applied to this case. Roberts contends that Hawaii law controls because both Mr. and Mrs. Griffing were domiciled in that state. Defendants seek to apply Illinois law because Mrs. Griffing provided in her trust agreement that Illinois law should govern questions relating to the agreement. The court concludes that the law of Illinois should be applied to this case.[3]

■ It is true that, in Illinois, the law of the donor's domicile generally controls questions about the donee's exercise of a power of appointment since the appointment is considered to be part of the instrument created by the donor. *In re Estate of Breault*, 29 Ill.2d 165, 174, 193 N.E.2d 824, 829, (1963). *Northern Trust Company v. Porter*, 368 Ill. 256, 263, 13 N.E.2d 487, 491 (1938). The express terms of Mrs. Griffing's trust agreement, however, place this case outside this general choice-of-law rule. Mrs. Griffing provided that Illinois law was to govern questions relating to the interpretation or validity of the trust agreement and the management of the trust created by it. This court will not overrule the state law preferences of the person who created the trust and power of appointment in question in the absence of a clear showing of conflict with an important public policy. *First National Bank of Chicago v. Ettlinger*, 465 F.2d 343, 347 (7th Cir.1972). Since questions relating to the exercise of a donee's power of appointment under an *inter vivos* trust are determined by the law governing the creation of the trust, *id.* at 346, Illinois law therefore controls here.[4]

Both Roberts and defendants look to a recent case in the Illinois Appellate Court as the guide for decision in this action. The case in question, *In re Estate of MacLeish*, 35 Ill.App.3d 835, 342 N.E.2d 740 (1st Dist. 1976), involved Article Va(b) of the will of MacLeish's wife, which provided that the trustee of a particular trust should distribute "the entire remaining principal of Trust One, and any accrued income therefrom, as BRUCE MacLEISH shall direct and appoint

---

**2.** Roberts also contends that Illinois law is not applicable to this case. Rather, she proposes that this court apply Hawaii law since Mr. and Mrs. Griffing were both domiciled in that state. The choice-of-law issue is insignificant if we accept Roberts' interpretation of Illinois law since it comports with her interpretation of Hawaii law. The choice-of-law question becomes critical, however, if we accept defendants understanding of Illinois law. For the reasons discussed *infra* at p. 732, the court concludes that Illinois law is to be applied in this case.

**3.** Because a federal court must apply the conflict of laws rules of the state in which it sits, *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the court turns to Illinois law to determine which state's substantive law should apply.

**4.** In *Ettlinger*, the *donee* of a testamentary power of appointment under an *inter vivos* trust specified that New York law should govern his will. Looking to the donee's intent in specifying what law should apply, the court concluded that the donee, who had moved to Florida, wanted his will probated as if he still lived in New York. It then turned to New York conflicts rules regarding the exercise of powers of appointment and decided that it was required to apply Illinois law with respect to that issue. The court's decision here comports with that conclusion since Illinois choice of law rules require us to apply Illinois substantive law.

in and by his last Will expressly exercising such power . . . . " MacLeish died testate, stating in his will, "Under the provisions of paragraph (b) of Article V added to the Will of my wife, ELIZABETH MOORE Mac-LEISH . . . I am given the power to appoint the entire remaining principal of Trust Number One and any accrued and undistributed income therefrom by my Will. Expressly exercising said power, I hereby appoint all of said assets to my estate . . . . "

The Illinois Appellate Court rejected a claim that MacLeish's attempted exercise of the power of appointment was invalid because MacLeish had incorrectly referred to Article V of his wife's will rather than to Article Va. In so doing, the court set up the following standard for the effective exercise of a testamentary power of appointment: "First, the intention of the testator to exercise the power must be shown. Second, there must be compliance with any conditions established by the donor for its exercise. *Northern Trust Co. v. House* (1954), 3 Ill.App.2d 10, 120 N.E.2d 234." 35 Ill.App.3d at 838, 342 N.E.2d at 743.

The court concluded that MacLeish had clearly intended to exercise the power of appointment and that, despite the incorrect reference to Article V of his wife's will, he effectively complied with the requirement of express exercise of the power. In drawing the latter conclusion, the court relied on basic principles of will construction that (1) the intent of the testator controls and courts should construe wills to give effect to a testator's general intention; (2) a devise or bequest should not be voided because of errors in describing the subject matter as long as enough remains to show the testator's intent; and (3) the court will use its equitable powers to correct technical defects in a will in order to effect the testator's intent. 35 Ill.App.3d at 839, 342 N.E.2d at 744. The court thus followed a long line of Illinois decisions in upholding MacLeish's exercise of his power of appointment.

Northern and the other defendants ask this court to apply the *MacLeish* decision across the board and to construe strictly the above quoted language so as to require absolute compliance with the narrowest possible interpretation of any condition imposed by the donor of a testamentary power of appointment, regardless of the donee's clear intent to exercise the power. How the Illinois Supreme Court would construe the requirements established in *MacLeish* or how it or the *MacLeish* court [5] would apply those principles to the facts as admitted in this case is, obviously, to some extent uncertain. This court takes guidance, however, from the long history of Illinois law in this area, and concludes that defendants' interpretation of the *MacLeish* decision does not comport with Illinois precedent. Defendants' motion is therefore denied.

Initially, it should be noted that we here consider two instruments rather than one. The donor, Mrs. Griffing, by trust agreement specified a manner for the exercise of a power of appointment. The donee, Mr. Griffing, exercised a power of appointment, but not precisely in the manner specified by the donor. In the absence of some indication to the contrary, it can be assumed that the donor "obviously intended to assure that the power would be exercised as a deliberate, considerate act, and to prevent an inadvertent exercise of the power by a residuary clause." *In re Estate of MacLeish,* 35 Ill.App.3d at 838, 342 N.E.2d at 743. The Illinois cases have, accordingly, focused upon the intention of the donee as the critical consideration.

It . . . appears clear that under Illinois law the intention of the testator supersedes the formal requirements with respect to the exercise of a power of appointment, and that extrinsic evidence may be introduced to show that intention.

*Northern Trust Co. v. Moscatelli,* 54 Ill. App.2d 316, 327, 203 N.E.2d 447, 452 (1964).

In the seminal Illinois decision on this issue, *Funk v. Eggleston,* 92 Ill. 515 (1879),

---

**5.** The parties have not cited, and this court has not discovered, any Illinois Supreme Court cases discussing the requirements for the effec-

tive exercise of a power of appointment on which the donor has imposed a condition of specific or express reference.

the Illinois Supreme Court made an in-depth analysis of the well-established English rules regarding the effective exercise of a power of appointment through a residuary clause in a will. English law required that the intent to execute the power be manifested by a specific reference to the power or to the subject matter of the power, or by the fact that the will would be inoperative without the aid of the power. The Illinois court rejected the proposition that intent can be shown only in this manner:

> [T]he rule which requires the existence of one of these three elements, in order to effect an execution of the power, is altogether subordinate and secondary in its character, and if circumstances could and should arise that indicated clearly the intention of the donee to work by the power, it could not be but that the artificial rule, predicated upon former experience, must give way and the primary and fundamental rule, which requires only that the intention be made clear and manifest, would prevail.

92 Ill. at 535–36. It concluded, consistently with the "liberal rules [governing] the ascertainment of the intentions of testators" that a "clear and manifest" intent to exercise a power of appointment, however shown, would be sufficient and should not be defeated by "following narrow and technical rules . . . ." 92 Ill. at 546–47.

The *Funk v. Eggleston* approach has been approved in numerous subsequent decisions by the Illinois courts. *See Merchants' Loan & Tr. Co. v. Patterson,* 308 Ill. 519, 139 N.E. 912 (1923); *Rettig v. Zander,* 364 Ill. 112, 4 N.E.2d 30 (1936); *Northern Trust Co. v. Moscatelli, supra; Hopkins v. Fauble,* 47 Ill.App.2d 263, 197 N.E.2d 725 (3d Dist. 1964); *Northern Trust Co. v. Cudahy,* 339 Ill.App. 603, 91 N.E.2d 607 (1st Dist.1950); *Foster v. Grey,* 96 Ill.App. 38 (1st Dist.1901).

In *Merchants' Loan & Tr. Co. v. Patterson,* 308 Ill. 519, 139 N.E. 912 (1923), the testator conveyed certain real estate in trust with the testator to receive income from the real estate until the trust terminated. The deed of trust provided that, in the event of the testator's death before the termination of the trust, the income and, ultimately, the property in trust would go to such persons as he appointed by will. Subsequently, the testator executed a second deed of trust in which he conveyed to the trustee an undivided half interest in his interest in the original trust, to be paid to the testator's wife for her life or, in the event of her death, the dissolution of their marriage or her remarriage, to their son. In his will the testator referred to the latter deed of trust, stating, "I hereby in this my will confirm said indenture of trust dated October 23, 1914."

The Illinois Supreme Court rejected as overly rigid and ritualistic the lower court's view that the testator failed to execute his power of appointment under the original deed of trust because he had not satisfied the condition in that instrument that the power be exercised by will. Following the *Funk v. Eggleston* approach, it looked rather to the testator's intent, as gleaned from the language of the will as well as the circumstances surrounding the execution of the various instruments. The Court was satisfied that the testator had effectively exercised his power of appointment to bequeath the property and its income to his wife and child even though the language of the will confirming the second deed of trust, when viewed in its narrowest sense, could give them an interest in it only during his lifetime. In so doing, it rejected a construction, the object of which "is to frustrate the intention" of the testator, 308 Ill. at 539, 139 N.E. at 919, and used its equitable powers to aid the testator's evident, if possibly defective, attempt to exercise his power of appointment. 308 Ill. at 541–42, 139 N.E. at 920.

A more recent case, *Hopkins v. Fauble,* 47 Ill.App.2d 263, 197 N.E.2d 725 (3d Dist.1964) involved a will which gave the testator's wife a testamentary power to direct the trustee of certain real estate held in trust to dispose of said real estate, and which alternatively provided for the disposition of the property in the event that she failed to give such direction. The wife died testate, de-

vising the real estate in question to her child. Some of the children challenged this disposition of the property, claiming that their mother had not properly exercised the testamentary power of appointment because she failed to satisfy the requirement of the husband's will that the disposition of the property be through direction to the trustee.

The appellate court declined to adopt this technical approach to will construction. Based on the precedents set in *Funk v. Eggleston* and *Merchants' Loan & Tr. Co. v. Patterson,* it determined that, despite the wife's failure to satisfy the specific terms of her husband's will, the evidence of her intent to exercise the power of appointment required a holding that she had effectively exercised such power.

Although, of course, none of these Illinois decision is factually dispositive of the situation here—a testamentary power of appointment conditioned on the express or specific exercise of such power—they do provided an interpretive framework for understanding the thrust of the *MacLeish* decision. This court believes that the Illinois courts would not construe *MacLeish* as requiring the narrowest possible construction of conditions imposed upon a power of appointment and the strictest compliance with such conditions as so construed. Rather, they would look primarily to evidence of the donee's intent to exercise his power of appointment.

Obviously, an exercise in precise conformity to the manner specified by the donor requires no other evidence of the donee's intention. Conversely, the failure of the donee to comply in any substantial respect with the donor's direction provides no assurance, as the donor intended, that the exercise of the power be a deliberate, considerate act. But where there is an exercise of the power in a manner that does not pre-

cisely comply with the donor's requirements, while that exercise may provide little guidance to the donee's intention, other evidence may clearly do so. That intent may be determined from other language in the will or by extrinsic circumstances, or both.

This court views the *MacLeish* two-step inquiry as an integrated test. Where the evidence of intent is powerful, the question of compliance should be examined in a light which favors fulfillment of both the donor's desire for assurance and the donee's intent. Where, however, evidence of the donee's intent is weak, a liberal construction of the condition of specific reference may well defeat the intentions of both donor and donee. In short, the question whether the donee's exercise sufficiently complies with the specific reference requirement cannot be divorced from the examination of the donee's intent.

The *MacLeish* court's discussion of the purposes of specific or express reference requirements supports this interpretation of the decision. As previously noted, the court there stated that the requirement for an express exercise of the power "was obviously intended to assure that the power would be exercised as a deliberate, considerate act, and to prevent an inadvertent exercise of the power by a residuary clause." *Supra.* In analyzing the will in issue, it looked to the testator's substantial compliance with the condition of express reference as evidence of his intention to exercise the power of appointment, and concluded, based on the testator's intent, that technical compliance with the conditions imposed on the power by the donor was not required.[6]

Since Mr. Griffing's clear intent to exercise his power of appointment in Roberts' favor is admitted for purposes of this motion,[7] this court cannot conclude, under

---

6. While the relevant *MacLeish* facts are less difficult than the facts of this case (*MacLeish* simply involved a misnomer of the clause granting the power of appointment), this court does not read the *MacLeish* decision as establishing the outer limits of will construction governing the Illinois courts.

7. At this stage of the proceedings, the court, of course, makes no findings as to the competence, admissibility, weight, or relevancy of any of Roberts' evidence as to Mr. Griffing's intent.

the above construction of the *MacLeish* decision in light of Illinois precedent, that Mr. Griffing's reference to his power of appointment, both specifically in Article VIII of his will and generally in Article X, is insufficient, as a matter of law, to constitute an exercise of the power. The motion for judgment on the pleadings is therefore denied.