NANCY P. YARDLEY, Indiv. and as Adm'r of the Estate of Steven Yardley, Deceased, Plaintiff-Appellant, v. STANTON YARDLEY *et al.*, Defendants-Appellees.

Second District   Nos. 84—487 and 85—435 cons.

Opinion filed October 8, 1985.

Richard V. Smith, of Sullivan, Smith, Hauser & Noonan, of Waukegan, for appellant.

Paul V. Esposito, of Lewis, Overbeck & Furman, of Chicago, for appellees.

JUSTICE SCHNAKE delivered the opinion of the court:

Plaintiff, Nancy P. Yardley, individually and as administrator of the estate of her husband, Steven Yardley, has brought these appeals from an order of the trial court under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615) which dismissed with prejudice counts II through VI of her six-count third-amended complaint against defendants, Stanton Yardley, Jerry Yardley, and the Northern Trust Company (the Northern), individually and as trustees. The dismissed counts sought various remedies against defendants in connection with their administration of certain trusts. Count I, which survived the order appealed from, sought actual and punitive damages from Stanton and Jerry Yardley for conversion of certain property which had belonged to plaintiff's decedent before he died.

Plaintiff filed her first notice of appeal, No. 84—487, within 30 days after the trial court denied her motion to vacate the dismissal but before judgment was entered on count I. When the trial judge denied plaintiff's motion to vacate the dismissal, he refused to make a finding under Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) that there was no just reason for delaying enforcement or appeal of the order of dismissal. The Northern filed a motion to dismiss that appeal as premature which was taken with the case.

At oral argument of that appeal, counsel for plaintiff informed this court that while that appeal was pending, count I had proceeded to a jury trial, and that within the week prior to oral argument, judgment was entered in his client's favor. Counsel stated that he intended to file a new notice of appeal from the dismissal order. Counsel did file the second notice of appeal, No. 85—435, in the trial court three days later.

Initially, this court on its own motion issued an order dismissing the second appeal because of plaintiff's failure to file a docketing statement. Subsequently, again on our own motion, we issued an order recalling and vacating that order of dismissal. The appeal was taken under advisement without further argument or filing of briefs, and the two appeals were consolidated for decision.

Before addressing the merits of the trial court's order dismissing counts II through VI of the complaint, we will consider the Northern's motion to dismiss appeal No. 84—487. The Northern maintains that because the trial court refused to make a finding under Rule 304(a) that there was no just reason for delaying enforcement or appeal of the order dismissing counts II through VI of the complaint, that order was not appealable until judgment was entered on the remaining count. The Northern contends that plaintiff's notice of appeal in No. 84—487, which was filed before judgment was entered on that count, is for that

reason insufficient to confer jurisdiction on this court. Plaintiff does not dispute that Rule 304(a) states the general rule that final judgments as to fewer than all of the claims are not appealable in the absence of such finding. Plaintiff, however, maintains that her first notice of appeal was timely filed under an exception to the general rule set forth in Rule 304(b)(1) (103 Ill. 2d R. 304(b)(1)).

■ The Northern is correct that in general under Rule 304(a) a judgment which adjudicates fewer than all the claims is not appealable in the absence of a finding by the trial court that there is no just reason for delaying enforcement or appeal. In the absence of such a finding, a notice of appeal filed before judgment is entered on all the claims is insufficient to confer jurisdiction on the reviewing court. *Farmers State Bank v. Thomas* (1983), 119 Ill. App. 3d 854, 457 N.E.2d 134.

Rule 304(b)(1), upon which plaintiff is relying, provides:

"The following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule:

(1) A judgment or order entered in the administration of an estate, guardianship, conservatorship, or similar proceeding which finally determines a right or status of a party." (103 Ill. 2d R. 304(b)(1).)

Plaintiff acknowledges that the order she is attempting to appeal was not entered in the administration of an estate or guardianship, but she contends that it was entered in a "similar proceeding." This argument is unconvincing.

The Committee Comments to Rule 304(b) state:

"Subparagraph (1) applies to orders that are final in character although entered in comprehensive proceedings that include other matters. Examples are in order admitting or refusing to admit a will to probate, appointing or removing an executor, or allowing or disallowing a claim." (Ill. Ann. Stat., ch. 110A, par. 304, Committee Comments, at 157 (Smith-Hurd 1985).)

In *In re Estate of Kime* (1981), 95 Ill. App. 3d 262, 419 N.E.2d 1246, the court discussed the purpose of Rule 304(b)(1). Initially, the court noted that under the rule orders in estate proceedings which finally determine the right or status of a party must be appealed within 30 days from entry of the order irrespective of whether a finding under Rule 304(a) is made. The court then stated:

"A central reason behind making the time for appeal of such orders mandatory, and not optional, is that certainty as to some issues is a necessity during the lengthy procedure of estate administration. Little imagination is needed to conjure up the intolerable consequences of permitting a party, at his option, to wait

until an estate administration is concluded before appealing an order, entered perhaps several years previously, which denied a motion to remove an executor or allowed a claim against the estate. In such circumstances, were an appellant successful, then the entire administration might have to be begun again. Thus, in the interests of efficiency and the sound and practical administration of estates, orders in estate proceedings must be appealed within 30 days from entry when they finally determine the right or status of a party, even though they are preliminary to a final settlement of estate proceedings." 95 Ill. App. 3d 262, 268.

The trusts involved in this case were not being administered in comprehensive court proceedings like estate or guardianship proceedings. They were being administered privately, out of court, by defendant trustees. Moreover, the trustees were not court-approved administrators required to settle various claims, and to make a final accounting to the court. Accordingly, the action filed in the trial court was not a proceeding similar to the administration of an estate or guardianship. Rule 304(b)(1) is inapplicable to this case.

Because the trial court refused to make the finding required by Rule 304(a), the order dismissing counts II through VI of the complaint was not appealable until judgment was entered on count I. Plaintiff's notice of appeal in No. 84—487, which was filed before judgment was entered on count I, was, therefore, insufficient to confer jurisdiction on this court, and the Northern's motion to dismiss that appeal is allowed.

■ This court does, however, have jurisdiction to review the propriety of the order dismissing plaintiff's complaint under the notice of appeal in No. 85—435 because it was filed within 30 days after judgment was entered on count I. (94 Ill. 2d R. 303. See *Kubala v. Dudlow* (1958), 17 Ill. App. 2d 463, 150 N.E.2d 643.) Although this court initially entered an order dismissing that appeal, we have since recalled and vacated that order, and the appeal is properly before us.

Before discussing the sufficiency of the several counts of plaintiff's complaint which were dismissed, it will be helpful to review certain principles of general application. Each of the counts was dismissed for failure to state a cause of action. The order of dismissal was entered pursuant to motions to dismiss filed by the Northern and Stanton Yardley under section 2—615 of the Code of Civil Procedure. Such motions admit all well-pleaded facts in the complaint, and they must be taken as true. (*Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 439 N.E.2d 60.) Conclusions unsupported by allegations of specific fact are not, however, admitted. (*Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 439 N.E.2d 60.) Under section 2—606 of the Code, if a claim is founded

upon a written instrument, a copy of the relevant portions of the instrument must be attached to the pleading as an exhibit or recited therein unless the instrument is not available. (Ill. Rev. Stat. 1983, ch. 110, par. 2—606.) A motion to dismiss does not admit allegations of a complaint in conflict with the facts disclosed by the exhibit. (*Wilbur Waggoner Equipment Rental & Excavating Co. v. Johnson* (1975), 33 Ill. App. 3d 358, 342 N.E.2d 266.) A complaint should not be dismissed on the pleadings unless it is clear that no set of facts could be proved which would entitle the plaintiff to recover. *Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 439 N.E.2d 60.

The following facts are disclosed by the briefs, pleadings and exhibits in this case. Plaintiff's decedent, Steven Yardley, was one of four sons of James W. and Rosalie Yardley. The other sons are James F. and defendants Stanton and Jerry Yardley.

In 1977 the father, James W. Yardley, died. His will created two testamentary trusts, trust A and trust B. James F. and Jerry Yardley and the Northern were designated trustees. (Apparently, Stanton Yardley was later substituted as trustee in the place of James F. Yardley.) According to the will, Rosalie was to receive the income of trust A for life. The trustees were given discretion to invade the principal on her behalf. Rosalie was given a power to appoint the principal and income at her death. The will provided that all principal and income not "effectively" appointed would be added to trust B.

Trust B was to be divided into four portions upon the death of the father, one portion for each of the sons. The income from each portion was to be paid to the son who was the beneficiary of that portion for life. The trustees were given discretionary authority to invade the principal of each portion on the son's behalf, and each son was given the right to withdraw certain percentages of the principal of his portion after the passage of certain periods of time. Each son was given a power to appoint his portion at his death. As relevant here, the will provided that in default of an appointment, the portion would be divided among the living descendants of the son.

On August 28, 1981, Rosalie established an *inter vivos* trust called the Rosalie A. Yardley Living Trust. Stanton and Jerry Yardley and the Northern were named trustees. On the same date that she established the *inter vivos* trust, Rosalie wrote a letter to Stanton and Jerry Yardley and the Northern as trustees of trust A. This letter stated, "You are hereby directed to distribute to *** [the] Co-Trustees of the Rosalie A. Yardley Living Trust all amounts of principal and income which may become distributable to me as the sole beneficiary of Trust A ***."

Under the *inter vivos* trust, the trustees were given discretionary authority to distribute income and principal to Rosalie during her lifetime. Upon her death, the trustees were directed to pay from the principal her funeral expenses, her just debts, and all taxes resulting from her death, unless "there [was] a probate of [her] estate," in which event the trustees were to pay such expenses to the extent that the executor or administrator was unable to do so. The *inter vivos* trust further provided that "[u]pon the death" of Rosalie, the trust estate would be divided into four separate trusts called "portions," one for each son. Each son was to receive the income of his portion for life. The trustees were given discretionary authority to invade the principal of each portion on behalf of the son whose portion it was. In addition, each son was given the unqualified right to withdraw all or any part of the principal of his portion. The trust further provided in paragraph 3.10 that if the vale of any portion, as determined by the corporate trustee, should fall below $50,000, and in the judgment of the corporate trustee, the costs of administration would not justify its continuation, "the Trustees shall then distribute such portion to the income beneficiaries thereof ***." Each son was given a power to appoint his portion at his death, and in default of appointment the portion was to be divided among his living descendants.

Rosalie Yardley died in June of 1982. At that time plaintiff was married to Steven. No children had been born of their marriage, but Steven had two children from a previous marriage.

On July 2, 1982, the Northern sent Steven and his brothers a letter reviewing their mother's estate plan. In the letter the Northern stated that there would be no probate proceedings because the only "probate assets" were the contents of Rosalie's home. The Northern estimated that the value of the *inter vivos* trust was $420,000. The Northern explained that the trust included "the typical language providing for debts and expenses," and that it "provides for an equal distribution to each of you once the Federal Estate Tax Return has been approved by the Internal Revenue Service." The letter further stated:

> "We estimate that the final distribution to each of you will be approximately $50,000. Please remember these are estimated figures and they may change in the future as we finalize the Federal Estate Tax Return. Even though the Trust Agreement provides for separate trusts to be established for each of you, we believe that an outright distribution would be appropriate."

The letter goes on to state that Rosalie did not exercise her power of appointment over trust A, and that, therefore, that trust would be added to the four portions of trust B. The value of trust A

was estimated to be $1,480,000. The letter further stated that the Federal and State tax returns would be filed by April of 1983, and that "it is our current opinion that we may be prepared to make distributions to you individually and to your trusts [portions of trust B] sometime in the third or fourth quarter of 1983." A copy of the *inter vivos* trust instrument was enclosed. Finally, the letter "welcome[d] any additional questions" that the sons might have.

Steven Yardley died two months after the above letter was sent. When the tax returns had been filed and audited, the Northern distributed Steven's portion of the *inter vivos* trust to trusts established for the benefit of his minor children.

Count II of the complaint is essentially based on a theory of promissory estoppel. It alleges that in the letter of July 2, 1982, the Northern promised Steven that it would distribute approximately $50,000 to him free of any trust or other restrictions. Count II further alleges that Steven believed that the Northern would fulfill its promise, and that the Northern knew or should have known that their promise would induce such a belief. Plaintiff, as administrator of her husband's estate, is seeking to enforce that promise. Actual damages in the amount of $50,000 as well as punitive damages are sought from the Northern.

The elements of promissory estoppel are (1) a promise unambiguous in terms, (2) reliance on such promise by the party to whom it was made, (3) which reliance was expected and foreseeable by the party making the promise, and (4) which reliance was to the detriment of the party to whom the promise was made. (*Dale v. Groebe & Co.* (1981), 103 Ill. App. 3d 649, 431 N.E.2d 1107; *S.M. Wilson & Co. v. Prepakt Concrete Co.* (1974), 23 Ill. App. 3d 137, 318 N.E.2d 722.) While the complaint alleges that in the letter the Northern "promised" Steven that it would distribute approximately $50,000 to him free of any trust or other restrictions, our review of the letter itself convinces us that it contains no such unambiguous promise. As noted above, the letter itself prevails over unsupported allegations about the letter in the complaint.

The letter was a review of Rosalie's estate plan, which included the Northern's current estimates or expectations regarding how that plan would be carried out. These expectations were obviously based on the fact that at that time Steven was still alive. There is no language in the letter which, considered in its proper context, can be construed as a promise to administer Steven's portion other than as required by the trust instrument. Moreover, as we conclude in our discussion of count III, the Northern properly followed the directions of

that document.

Plaintiff directs our attention to the following sentence: "Even though the Trust Agreement provides for separate trusts to be established for each of you, we believe that an outright distribution would be appropriate." The word "believe" in this context has been defined as "[t]o expect or suppose; think." (American Heritage Dictionary 121 (1969).) That sentence was no more than a statement of the Northern's current expectations regarding execution of the estate plan. Moreover, that statement of expectations was entirely reasonable considered in light of the fact that Steven was then living, and that, as noted in the letter, the value of his portion after payment of taxes was expected to be about $50,000, and the trust instrument allowed distribution of any portion with a value of below $50,000. As a result of the untimely death of Steven, the Northern's expectations were not fulfilled, but there was no breach of any promise made by it.

Plaintiff also seeks to support her argument that a definite promise was made by referring to her allegations in the complaint regarding the Northern's decision to make an outright distribution to Steven and its intent in writing the letter. Those allegations are insufficient, however, because the question of whether the Northern made a definite promise depends on what the Northern wrote, not its unstated intentions or plans.

■ The cases cited by plaintiff in this regard are either not applicable, or they are distinguishable. In *Bank of Marion v. Robert "Chick" Fritz, Inc.* (1974), 57 Ill. 2d 120, 311 N.E.2d 138, the court did not, as plaintiff contends, evaluate the sufficiency of the evidence on the question of whether there had been an unambiguous promise. The court merely held that sufficient evidence was presented for the jury to conclude that there had been no reliance. In *Bank Computer Network Corp. v. Continental Illinois National Bank & Trust Co.* (1982), 110 Ill. App. 3d 492, 442 N.E.2d 586, the court did, indeed, conclude that reasonable men could draw different but equally reasonable inferences concerning the existence of a definite promise in that case. The plaintiff there, however, sought to establish an implied promise from a series of letters and conversations made during the course of complicated commercial negotiations. In that context reasonable minds could differ on whether there had been an implied promise. Here, there is a single letter from a trustee to his beneficiary explaining his mother's estate plan. There is no basis in the facts pleaded or the letter itself for a conclusion that there was a definite promise. Accordingly, the dismissal of count II for failure to state a cause of action was proper.

Count III of the complaint is based on the theory of conversion. Plaintiff notes that Rosalie's *inter vivos* trust provided that "[u]pon the death" of Rosalie, the trust estate "shall" be divided into four "equal and separate trusts," called portions. Rosalie died in June of 1982. Plaintiff also notes that in paragraph 3.10 the trustees were given a power to terminate any portion if its value fell below $50,000. Count III essentially alleges that on or about July 2, 1982, the Northern exercised its power of termination over Steven's portion, and the property, although still held by the Northern, became Steven's outright. Plaintiff maintains, therefore, that when Steven died on September 2, 1982, the property became a part of his estate. Plaintiff, as administrator of that estate, as well as individually, is seeking $50,000 from the Northern as well as "all other damages authorized by statute or the common law."

The problem with this count is its allegation that the Northern exercised the power of termination on July 2, 1982. The trust instrument conferred that power by the following language:

"3.10 Anything herein to the contrary notwithstanding, if at any time after the division of the Trust Estate into Portions the value of any Portion, as determined by the corporate Trustee, is less than FIFTY THOUSAND DOLLARS, and in the judgment of the corporate Trustee the cost of administering such Portion does not justify its continuation, the Trustees shall then distribute such Portion to the income beneficiaries thereof, in the same proportions in which they are then eligible to receive such income."

Thus, the trust instrument specifies that the power of termination is to be exercised by distribution. The settlor of a trust may make provision for the method by which a power of termination is to be exercised and such a provision must be followed. (Bogert, Trusts & Trustees sec. 1001 (2d ed. 1983).) Here, the complaint acknowledges that distribution of Steven's portion was not made during the three months he lived following his mother's death. His portion, therefore, was not terminated prior to his death, and plaintiff's allegation to the contrary is an erroneous legal conclusion unsupported by the facts pleaded in her complaint. Because Steven died without exercising his power of appointment over his portion, under the terms of the trust it was to be divided among his living descendants. The Northern followed this direction.

We are aware that plaintiff did allege that on or about July 2, 1982, the Northern decided that it was going to distribute the property to Steven outright. A power of revocation, however, is not exer-

cised by the expression of an intent to revoke in the future. Bogert, Trusts & Trustees sec. 1001 (2d ed. 1983).

■■ The essence of conversion is the wrongful deprivation of property from one who has a right to its immediate possession. (*Bender v. Consolidated Mink Ranch, Inc.* (1982), 110 Ill. App. 3d 207, 441 N.E.2d 1315.) Because Steven's trust portion was not terminated prior to his death, the conversion count is insufficient. The trial court properly dismissed count III.

Count IV is an action for an accounting. In this count plaintiff alleges that Rosalie's letter of August 28, 1981, to defendants Stanton and Jerry Yardley, and the Northern, as trustees of trust A, which directed them to distribute to her *inter vivos* trust "all amounts of principal and income which may become distributable to me as the sole beneficiary of Trust A," was an exercise of her power of appointment over trust A. Plaintiff alleges that defendants did not honor this appointment by transferring all principal and income from trust A to the *inter vivos* trust. Instead, when Rosalie died the property in trust A was transferred to trust B. Plaintiff alleges that this action by the trustees was taken to limit Steven's access to the property. Under trust B he had the right to withdraw only a percentage of his portion, whereas under the *inter vivos* trust he had the right to withdraw his entire portion. Plaintiff maintains that defendants should have transferred the property from trust A to the *inter vivos* trust and informed Steven of his right to withdraw all of it. Plaintiff, as administrator of Steven's estate, seeks an order for an accounting of those assets which should have been transferred from trust A to the *inter vivos* trust, and judgment for the amount of those assets against defendants.

■■ This count suffers from the same defect as count III. It is based on an erroneous legal conclusion unsupported by the facts pleaded, *i.e.,* the conclusion that Rosalie's letter of August 28, 1981, was an exercise of her power of appointment. Rosalie's power of appointment was created in the will of her husband by the following language:

> "Upon the death of my spouse the undistributed principal and income of Trust A shall be distributed to such person or persons, or to the estate of my spouse, free of all trusts created hereunder, in such manner and in such proportions as my spouse may appoint, in trust or otherwise, by the last unrevoked instrument in writing, other than a will, *specifically referring to this power of appointment,* filed by my spouse with my corporate Trustee prior to my spouse's death." (Emphasis

added.)

Initially, we note that Rosalie's letter requested the transfer to her *inter vivos* trust of "all amounts of principal and income which may become distributable to me as the sole beneficiary of Trust A." No principal or income, however, was distributable to Rosalie under the power of appointment because it could be effective only at her death. Property was distributable to her estate under the power, but not to her. The letter on its face appears to be a request for the trustees to transfer to her *inter vivos* trust all income and principal from trust A which would otherwise have been paid to her during her life. There is yet a more fundamental problem with plaintiff's theory. Rosalie's letter of August 28, 1981, did not specifically refer to the power of appointment as required by her husband's will. As stated in *In re Estate of MacLeish* (1976), 35 Ill. App. 3d 835, 838, 342 N.E.2d 740:

> "For an exercise of a testamentary power of appointment to be valid and effective, two requirements must be satisfied. First, the intention of the testator to exercise the power must be shown. *Second, there must be compliance with any conditions established by the donor for its exercise.*" (Emphasis added.)

We are aware that under certain circumstances equity will aid a defective execution of a power of appointment. Our supreme court has stated that "[d]efects which are of the essence or substance of the power will not be remedied by equity, [citation omitted] but any defect not so of the essence or substance will be aided ***." (*Merchants' Loan & Trust Co. v. Patterson* (1923), 308 Ill. 519, 537, 139 N.E. 912.) For example, in *Estate of MacLeish* a power of appointment was created in article Va of a certain will and was required to be exercised expressly by the will of the donee of the power. The court recognized as valid an exercise of the power even though the power was referred to as having been created in article V of the will. Article V did not grant any power of appointment. In *Roberts v. Northern Trust Co.* (N.D. Ill. 1982), 550 F. Supp. 729, cited by plaintiff, the power of appointment was created in an *inter vivos* trust which required the power to be exercised in the will of the donee by specific reference "to this power to appoint." (550 F. Supp. 729, 731.) The court, applying Illinois law, held that if the requisite intent to exercise the power could be proved, the court would recognize as a valid exercise of the power, a gift in the donee's will of "any property over which I may possess any power of appointment" (550 F. Supp. 729, 731), where the will had previously explicitly referred to power of appointment created by the *inter vivos* trust. (See generally Annot., 15 A.L.R.4th 810

(1982).) We are aware of no case, however, where the document creating the power required "specific reference to this power," and a purported exercise of the power, which did not refer to any power of appointment, was recognized as valid. It seems to us that the failure to mention any power where the instrument creating the power requires "specific reference to this power" is a defect which is of the essence or substance of the power and which will not, therefore, be aided in equity. A ruling to the contrary would render the condition imposed by the donor of the power meaningless. See *Estate of Kirkwood* (1978), 96 Misc. 2d 1098, 1099, 410 N.Y.S.2d 500, 501 (where instrument creating power required specific reference to "this power," a will making a bequest of "all I possess upon my death" did not effectively exercise power).

■ Plaintiff contends that because this case involves a motion to dismiss under section 2—615, and because James W. Yardley's will, which created the power, is not attached to her complaint, we cannot consider the will in assessing the sufficiency of her complaint. We disagree. Under section 2—606 discussed above, the will was required to be attached to the complaint. Moreover, as previously noted, the terms of an exhibit control the allegations in the pleading. Although plaintiff neglected to attach the will to her pleading, she has admitted that there is a copy of it in the record. Under these circumstances, we can see no purpose in closing our eyes to the terms of the will.

With respect to count IV, plaintiff also maintains that the trustees did not provide Steven with sufficient information regarding his rights to his portion of the *inter vivos* trust. This contention is without merit and will be addressed in more detail in our discussion of count VI.

Rosalie never exercised her power of appointment over trust A. Plaintiff's action for an accounting is insufficient, and the trial court properly dismissed count IV.

The legal theory behind count V is breach of trust or malfeasance. Plaintiff alleges that the trustee "[f]ailed and refused to establish a trust for the benefit of Steven Yardley upon the death of the settlor," and that as a consequence, prior to his death three months later, Steven was unable to exercise power of appointment or his right to withdraw principal. Count V includes many other legal conclusions, but the above statement is a fair summary of the gist of that count. Judgment is sought against all three defendants "for the full amount of the monies which should have been placed in trust for Steven Yardley."

■ This count, like two of its predecessors, is premised on an er-

roneous legal conclusion unsupported by the pleaded facts, *i.e.*, that the trust for the benefit of Steven did not exist upon the death of Rosalie. The essential elements to the creation of a trust are a settlor and a trustee, subject matter or property, and beneficiaries, with the nature and quantity of their interest specified along with the manner and time in which the trust is to be performed. (*Wynekoop v. Wynekoop* (1950), 407 Ill. 219, 95 N.E.2d 457.) These elements certainly existed upon the death of Rosalie, and, therefore, Steven's trust or portion existed at that time. We see no reason why he could not have exercised his power of appointment over his portion if he had chosen to do so. Plaintiff has not alleged that he attempted to exercise the power. We need not decide whether, under the terms of the trust instrument, Steven could have exercised his right to withdraw the principal of his portion prior to resolution of the estate and inheritance tax matters. (See generally *Wiener v. Severson* (1957), 11 Ill. 2d 347, 143 N.E.2d 225.) Plaintiff has not pleaded that Steven attempted to exercise that right. His failure to do so was clearly not a consequence of the trustees' failure to establish a trust as alleged by plaintiff because, as we held above, the trust did exist. Plaintiff has not alleged facts establishing breach of trust or malfeasance, and count V was properly dismissed.

In count VI plaintiff alleges that the defendant trustees did not provide Steven "with the mechanism and information necessary to obtain" prior to his death the property held by the Northern for his benefit. It is alleged that had they done so, Steven would have taken the property prior to his death. Plaintiff, as Steven's widow, maintains that under these circumstances, the property should be considered part of Steven's estate, and she seeks (1) a declaration that she is entitled to her statutory share, and (2) imposition of a resulting or constructive trust on the property in favor of Steven's estate or heirs.

In support of this count plaintiff cites *Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 383 N.E.2d 185, in which our supreme court addressed the issue of when an *inter vivos* transfer of property by one spouse is valid as against the marital rights of the surviving spouse. The court held that such an *inter vivos* transfer is valid unless the transaction is tantamount to a fraud as manifested by the absence of a donative intent to make a conveyance of a present interest in the property conveyed. Plaintiff maintains that because Steven would have taken the property at issue if he had been provided with the means to do so, he did not have any donative intent, and she should be entitled to her statutory share.

In our judgment *Johnson* is inapplicable to the instant case. *John-*

*son* involved conduct by one spouse which placed property outside of his estate against the marital rights of the surviving spouse. The validity of such conduct was held to depend on whether it was undertaken with the requisite donative intent. Here, plaintiff is not complaining about conduct by her deceased husband, but rather about the conduct of the trustees. In fact, she maintains that her husband would have brought the property into his estate but for misconduct on the part of the trustees.

Count VI is essentially an action against the trustees for breach of their fiduciary duty to provide information to a beneficiary to enable him to protect his rights. (See generally *Chapman v. Northern Trust Co.* (1957), 13 Ill. App. 2d 386, 141 N.E.2d 744.) The sufficiency of this cause of action is, of course, dependent in part upon whether the facts pleaded show such misconduct on the part of the trustees. Plaintiff alleges that the trustees did not provide Steven "with the mechanism and information necessary to obtain" the property held by the Northern for his benefit. We will assume for purposes of evaluating the sufficiency of this count that Steven had the right to obtain the property or a vested interest in it prior to his death by exercising his right of withdrawal.

■ Plaintiff acknowledges that with the letter of July 2, 1982, Steven was sent a copy of the trust instrument, which set forth his right to withdraw the principal from his portion. It is true that in the letter Steven was also informed that the Northern expected to complete the tax proceedings by the third quarter of 1983 and believed that an outright distribution of Steven's portion would be appropriate. This information, however, was not contrary to the provisions of the trust instrument, and did not prevent Steven from exercising his rights under that document. Plaintiff has not alleged facts showing that the trustees were guilty of misconduct which prevented Steven from exercising his rights. Accordingly, count VI was properly dismissed.

For the foregoing reasons, in No. 84—487 the appeal is dismissed. In No. 85—435, the judgment of the circuit court of Lake County is affirmed.

No. 84—487—Appeal dismissed.

No. 85—435—Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.