UNITED STATES of America

v.

**GENERAL MOTORS CORPORATION.**

Civ. A. Nos. 4–87–580–E, 4–87–583–E.

United States District Court,
N.D. Texas,
Fort Worth Division.

Dec. 19, 1988.

Linda C. Anderson, Daniel S. Goodman, F. Henry Habicht, II, James D. Robertson, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Wayne Hughes, Asst. U.S. Atty., Fort Worth, Tex., Nancy N. Lynch, Asst. Atty. Gen., Environmental Protection Div., Austin, Tex., Michael C. Barra, Asst. Reg. Counsel, U.S. Environmental Protection Agency–Region VI, Dallas, Tex., for plaintiff.

Brett A. Ringle, Robert T. Stewart, Jones, Day, Reavis & Pogue, Dallas, Tex. (Jonathan G. Kerr, Law, Snakard & Gambill, P.C., Fort Worth, Tex., William L. Weber, Jr., Patrick J. McCarroll, General Motors Legal Staff, Detroit, Mich., of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

MAHON, District Judge.

The United States, at the request of the United States Environmental Protection Agency ("EPA") brought this action against Defendant General Motors Corporations ("GM") under the Clean Air Act, as amended in 1977, 42 U.S.C. § 7401 et seq. The day after the EPA filed its enforcement action, GM filed an action seeking declaratory and injunctive relief. GM sought a declaration that it was in compliance with the Clean Air Act as implemented by the Texas State Implementation Plan ("SIP"). Both actions have been consolidated, and both sides motion for various forms of relief. GM moves the Court for judgment on the pleadings, and the EPA moves the Court to dismiss GM's declaratory judgment action, asserting that it is jurisdictionally barred by the absence of the United States' waiver of sovereign immunity.

Finding GM's motion for judgment on the pleadings meritorious for the reasons set forth below, the Court need not address the merits of the EPA's motion to dismiss.

The dismissal of the EPA's enforcement action renders GM's declaratory judgment action moot.

### Statement of Facts

General Motors owns and operates an automobile assembly plant in Arlington, Texas. Painting activities at the Arlington plant include the application of paint, such as primer surfacer and topcoat coatings, to General Motors automobiles. The application of primer surfacer and topcoat coatings results in the emission of volatile organic compounds (known as "VOCs") into the air. VOCs may contribute to the formation of ozone. Pursuant to the Clean Air Act, 42 U.S.C. §§ 7401–7626, EPA has promulgated a national standard for the permissible level of ozone in the ambient air.

Congress in the Clean Air Act delegated broad authority to the states to study various manufacturing controls and to designate contaminant emissions rates necessary to attain the ozone national ambient air quality standard. Under the Clean Air Act, the states adopt their desired mix or controls and emissions rates in the form of state implementation plans ("SIPs").[1] Although SIPs and revisions to SIPs are subject to EPA approval, the Clean Air Act limits EPA's review to determining whether the SIP will ensure attainment of the national ambient air standards. If those standards are met, EPA may not modify or reject specific methods of control adopted by the state.[2]

Pursuant to the authority of the Clean Air Act, Texas promulgated its SIP regulations for VOCs, and EPA approved the relevant portions of the Texas SIP for VOCs in March 1980. One method of control adopted by Texas and approved by EPA in the SIP is a specification of the maximum VOC content of various coatings

---

1. The SIPs are in the form of regulations promulgated on a contaminant by contaminant basis. For example, in Texas there are SIP regulations for VOCs, SIP regulations for lead, etc.

2. The Texas Air Control Board ("TACB") acts on behalf of the State of Texas with respect to the Clean Air Act. Several provisions of the federally-approved SIP for Texas allow the TACB to act through its Executive Director.

used in automobile painting operations.[3] 31 T.A.C. § 115.191(8). The sole basis for this lawsuit is the EPA's allegation that the General Motors Arlington painting facility uses two primer surfacer coatings and one topcoat coating containing VOCs in excess of the maximum VOC content set forth by the Texas SIP.

The Texas SIP regulations for VOCs specifically grant the Executive Director of the Texas Air Control Board ("TACB") authority to approve, without consent or approval of EPA, substantially equivalent methods of control (known as "alternate methods of control" or "AMOCs") as alternatives to those controls originally set forth in the SIP. 31 T.A.C. § 115.401(a). An AMOC by definition results in substantially equivalent levels of air contaminant emissions and therefore does not affect attainment of national ambient air standards or adversely impact the atmosphere.

As EPA tacitly acknowledged when it approved the AMOC Texas SIP provision for VOCs, the Clean Air Act authorizes the State of Texas to approve AMOCs as part of the State's plan to reach attainment. So long as emissions are substantially equivalent, TACB's exercise of the AMOC provision is mandated by the federally-approved SIP. Although EPA now takes the position that each AMOC must be federally approved as a SIP revision, the unambiguous provisions of the Texas SIP set forth no such requirement.

On October 28, 1985, the Executive Director of TACB issued an AMOC to General Motors for the two primer surfacer coatings and one topcoat coating at the Arlington plant, which are the basis of the EPA's Complaint. This AMOC allows use of higher VOC-content coatings, *because* they are applied at a higher transfer efficiency through the use of electrostatic rather than conventional application equipment, thereby insuring substantially equivalent VOC emissions.[4]

The requirements of this AMOC now govern the VOC content of General Motors' coatings pursuant to the federally-approved Texas SIP. By adhering to the requirements of this AMOC, General Motors argues that it is in compliance with the Texas SIP and the Clean Air Act.[5] Even though Texas issued the AMOC, thereby restricting emissions to a level substantially equivalent to that level of emissions which would exist if coatings originally set forth in the Texas SIP could be used, the EPA initiated this lawsuit on the premise that it must expressly approve an AMOC as a SIP revision. This premise is without merit.

*Discussion*

■ This Court recognizes that judgment on the pleadings is not generally favored and should not be granted unless the movant demonstrates that no genuine issue of material fact exists and that judgment is proper on the pleadings as a matter of law. *See Greenberg v. General Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir. 1973); *Lambert v. Inryco*, 569 F.Supp. 908, 912 (W.D.Okla.1980). When considering a

---

3. The maximum VOC contents of coatings set forth in 31 T.A.C. § 115.191(8) were proposed assuming use of water-based coatings applied at thirty percent "transfer efficiency." The term "transfer efficiency" refers to the amount of coating that ends up on the automobile compared to the total amount used. A higher transfer efficiency means that more of the VOCs in a can of paint adhere to the automobile and less are emitted to the air.

4. The coatings set forth in the Texas SIP, even if commercially available for use at the plant, could only be used to lower transfer efficiencies. General Motors requested and TACB issued the AMOC because the primer surfacer and topcoat coatings set forth in 31 T.A.C. § 115.191(8) have become obsolete as a result of

technical infeasibility. In over thirty-three years of operations, General Motors' Arlington plant has never used those specified coatings. In fact, no automobile manufacturer in the United States uses those coatings. The information in this footnote is by way of background only and is not necessary for a determination of General Motors' entitlement to judgment on the pleadings.

5. In deciding this motion, the Court need not consider whether General Motors is in compliance with the terms and conditions of the AMOC. Plaintiff does not allege that General Motors has not complied with the AMOC. Rather, Plaintiff alleges only that General Motors has not used coatings set forth in 31 T.A.C. § 115.191(8).

motion for judgment on the pleadings, all well-pleaded factual allegations in the complaint are taken as true, and the determination to be made is whether the movant, as a matter of law, is entitled to judgment. *See, e.g., Cash v. Commissioner of Internal Revenue,* 580 F.2d 152, 154 (5th Cir. 1978); *Roberts v. Northern Trust Co.,* 550 F.Supp. 729, 729 (N.D.Ill.1982). Facts present in the pleadings and the inferences drawn therefrom must be viewed by the Court in light most favorable to the nonmoving party. Wright & Miller, *Federal Practice and Procedure: Civil* § 1368 (1969). The application of these standards of review to the EPA's complaint and General Motors' answer, evaluated on their merits under controlling case and statutory law, mandate the entry of judgment in GM's favor.

Section 115.401(a) of the Texas SIP provides:

Any person affected by any control requirements of Chapter 115 of this title [relating to Volatile Organic Compounds] may request the Executive Director to approve alternate methods of control. The Executive Director shall approve such alternate methods of control if it can be demonstrated that such control will be substantially equivalent to the methods of control specified in this regulation.

31 T.A.C. § 115.401(a). As part of the VOC portion of the Texas SIP, the EPA approved section 115.401(a) in the March 25, 1980 *Federal Register.* 45 Fed.Reg. 19231 (March 25, 1980).

Pursuant to the authority vested in him by section 115.401(a), the Executive Director of the TACB issued to GM an AMOC which permitted the use of higher VOC-content coatings for the two primer surfacer coatings and the one topcoat coating which are the subject matter of the EPA's complaint. Although the basis of the Executive Director's issuance of the AMOC is not in issue in this litigation nor relevant to a determination of GM's motion for judgment on the pleadings, the Court notes that the AMOC was issued because the higher content VOC coatings were applied at an increased transfer efficiency, thereby insuring substantially equivalent VOC emissions. The AMOC simply provided GM with another method of complying with the SIP's limitation of VOCs actually emitted into the air, although a higher VOC-content paint was being used.[6] Under section 115.-401(a), the issuance of an AMOC is mandatory where the emissions under the alternate control procedures are "substantially equivalent" to those specified by SIP regulation.

The EPA's complaint does not allege that the VOCs emitted from GM's coating operations exceed those amounts that would have been emitted from coating operations which used paint with the VOC content specified by section 115.191(8). Such an allegation, of course, would be beside the point, since the VOC content specifications contained in section 115.191(8) have been superceded by the AMOC issued to GM. The EPA's complaint in no respect alleges or implies that GM has failed to comply with the AMOC. Rather, the Plaintiff argues that the AMOC issued to GM is actually a revision of the Texas SIP and such revision can only be implemented with EPA approval. 42 U.S.C. § 7410(i). Under the facts as alleged in the EPA's complaint, and General Motors' answer, viewed in light of the express language contained in

**6.** Section 115.191(8) of Texas' SIP establishes a "benchmark" against which emissions of VOCs may be evaluated. Ostensibly, the coatings set forth in section 115.191(8) are based on an acceptable VOC emission level. The coatings allowed by this regulation provide for the use of water-based paint applied at a thirty percent transfer efficiency. Section 115.191(8) when considered in conjunction with its regulatory counterpart, section 115.401(a)—which permits Executive Director approval of an AMOC—is subject to only one sensible construction: this regulation requires that the operation of coating processes emit no more VOCs that would be emitted from an operation that applied water-based paint at a thirty percent transfer efficiency. If a non-waterbased, higher VOC-content paint is applied with greater transfer efficiency and results in no greater VOC emissions then that required by the "benchmark" established in section 115.191(8), then the Executive Director is required to approve the coating operation under section 115.401(a).

31 T.A.C. § 115.401(a), the EPA's argument cannot be sustained.

 In essence, the EPA argues that section 115.401(a), which it expressly approved, does not mean what it says. In support of this specious proposition, the EPA proffers what can only be described, charitably, as a "metaphysical" statutory interpretation. When confronted with the express language of section 115.401(a), which expressly permits an alternative method of control to achieve substantially equivalent compliance with national ambient air standards, the EPA blandly notes that such provision is too "generic" and "too opaque" to undermine the EPA's all "too important" review function under the Clean Air Act.[7] The EPA's argument is simply too tenuous to surmount the plain language of section 115.401(a).

As the District of Columbia Circuit Court of Appeals recognized in *Reuters Ltd. v. FCC*, 781 F.2d 946, 950 (D.C.Cir.1986), "an agency must adhere to its own rules and regulations. *Ad hoc* departures from those rules, even to achieve laudable aims cannot be sanctioned. . . ." Here, the EPA approved section 115.401(a) of the Texas SIP. Section 115.401(a) unambiguously delegated unilateral authority to the TACB to approve alternate manufacturing controls, provided, of course, that such controls do not permit an increase in the level of emissions allowed by the Texas SIP. There was nothing in the EPA's approval of section 115.401(a), noticed in the *Federal Register* on March 25, 1980, to indicate that the TACB's authority was subject to further EPA review. The EPA approved the AMOC provision without reserving approval authority over variances.

If the EPA believes that the discretionary authority vested in the TACB under section 115.401(a) is undermining national ambient air standards, then it may seek a revision of the SIP under 42 U.S.C. § 7410(a)(2)(H). Simply because the EPA now believes it has made a mistake in failing to reserve the right to approve

AMOCs, GM should not be subjected to substantial civil penalties—here, $25,000 a day since 1982—when the pleadings before this Court do not contain a single allegation that GM has violated the AMOC issued to it. GM, quite rightly, relied on the TACB's issuance of the AMOC: the Texas SIP expressly allowed the TACB's Executive Director to approve alternate emission control methods. The EPA approved the Texas SIP and, in particular, section 115.401(a), which authorized the TACB to grant GM the AMOC in issue here. The EPA is bound by its approval of section 115.401(a).

Eight years after delegating AMOC authority to the State of Texas, this delegation cannot now, inexplicably, be transformed into a SIP "revision" which requires EPA approval. The EPA's argument, in this regard, is sadly misguided. Perhaps in another case, where an allegation was made that emissions emanating from the operations of the regulated source so exceeded SIP guidelines that national air standards were jeopardized, or where an AMOC was issued by state authorities improvidently or in bad-faith, an assertion that an AMOC constituted a SIP revision would not seem so blatantly disingenuous.

But here, in the case at bar, the EPA's argumentation is nothing more than sophistry. The EPA has not alleged in its complaint that VOC emissions resulting from GM's coating operations actually exceed those allowed by the Texas SIP. The EPA simply alleges that the coating operations at GM's Arlington plant utilize paint which exceeds the VOC-content levels set forth by the Texas SIP. GM does not deny this allegation; rather, GM embraces it and asserts that very allegation as the reason GM initially sought an AMOC eight years ago. An AMOC issued under the VOC portion of the Texas SIP *is* an implementation of the SIP, *not a modification*. AMOCs do not result in any change in the level of emissions emanating from a specific source; instead, an AMOC merely alters the method of control used to achieve compliance.

7. EPA's Brief in Opposition to GM's Motion for Judgment on the Pleadings, filed February 12, 1988, p. 13.

There is no allegation that GM has not complied with the AMOC issued to it by the TACB; hence, any allegation that GM violated the Texas SIP must be made with reference to the standards applicable to GM *under the AMOC.*

As demonstrated by its amicus brief filed in this cause, the State of Texas has consistently viewed section 115.401(a) of the Texas SIP as allowing TACB's Executive Director to authorize AMOCs without EPA approval. EPA approval was not necessary because the "AMOC process, by its express terms, provides for the same level of emission control as the requirement for which it substitutes."[8] Thus, national air standards are not threatened by the issuance of AMOCs. Further, section 3.10(b) of the Texas Clean Air Act prohibits the TACB from prescribing specific emission control methods. Such a prohibition was clearly designed to avoid the necessity of obtaining EPA approval through the lengthy SIP revision process and to allow the TACB flexibility in fulfilling its statutory responsibilities.

Even if section 115.401(a) was ambiguous, the TACB's interpretation would control. As the Fifth Circuit Court of Appeals wrote in *Florida Power & Light Co. v. Costle,* 650 F.2d 579, 588 (5th Cir.1981), the "EPA is to be accorded no discretion in interpreting state law." Quoting *United States v. Interlake, Inc.,* 432 F.Supp. 985, 987 (N.D.Ill.1977), the court continued, stating that "[q]uite the contrary is true: the United States should defer to the state's interpretation of the terms of its air pollution control plan when said interpretation is consistent with the Clean Air Act." More recently, in *American Cyanamid v. U.S. E.P.A.,* 810 F.2d 493, 500–501 (5th Cir. 1987), the Fifth Circuit Court of Appeals reiterated that "congress, in explaining the [Clean Air Act], found that the prevention and control of air pollution ... is the primary responsibility of States and local governments...."

The precedent of the Fifth Circuit must control this Court's decision today. The EPA's attempt to tacitly impose a require-

ment of EPA approval upon the clear, unambiguous provisions of section 115.401(a) contravenes the clear intent of both the State of Texas and the regulation's plain meaning. There is no allegation in the record before this Court that GM has not complied with the AMOC issued by the TACB pursuant to section 115.401(a). Absent such an allegation, the record thus developed establishes that GM is not in violation of the Texas SIP, specifically, section 115.191(8). Such a charge by the EPA simply misses the point. Section 115.191(8) has been superceded in this case by the State's approval of GM's AMOC. Unhappy with this result, the EPA should correct its error by seeking a revision of the Texas SIP which would include EPA approval of alternate control methods approved by the State. The EPA cannot, however, bypass the procedural safeguards designed to protect the entities it regulates. Nor can it use this enforcement action as a surrogate method of enacting vague EPA policy or new federal rules. This is not the proper forum. If the EPA wants to reserve the right to approve AMOCs issued by the State, then the EPA knows how to say so and should say so through a SIP revision. But some after-the-fact proclamation of what the EPA's intent was when approving section 115.401(a) is no substitute for proper rulemaking procedures.

### ORDER

It is undisputed that no allegation is contained in the EPA's complaint that GM has violated the terms or conditions of the AMOC under which it operates its coating processes at the Arlington plant. As no genuine issue of material fact exists in regard to GM's compliance with the AMOC, and because such compliance establishes that GM has not violated the Texas SIP as a matter of law, GM's motion for judgment on the pleadings is GRANTED, and the EPA's complaint is DISMISSED with prejudice. This ruling in GM's favor effectively grants GM the relief it seeks in its declaratory judgment action and renders that consolidated action and the EPA's mo-

---

8. Amicus brief at p. 4.

tion to dismiss it for lack of a waiver of sovereign immunity MOOT.

It is so Ordered. A judgment consistent with this Opinion will be entered.